CARLETON D. BEH, appellant, v. CITY OF WEST DES MOINES, appellee.

No. 51498.

(Reported in 131 N.W.2d 488)

212

NOVEMBER 17, 1964.

REHEARING DENIED JANUARY 12, 1965.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Jack R. Hall, of Des Moines, for appellee.

SNELL, J.—This is an appeal by plaintiff, property owner, from paving assessments levied by defendant, City of West Des Moines, to pay for the assessable cost of paving Nineteenth Street along the eastern boundary of plaintiff's property.

Nineteenth Street in West Des Moines extends north after a northwest by southeast curve and diagonal crossing of Grand Avenue. The land on the east side of Nineteenth Street has been platted into lots and improved by the construction of homes and in the southern part (lots 27, 28, 29) with commercial buildings. The homes are in the price range from about $14,500 to $18,000. As shown by the plat of the area there is some variation in the size of the lots. By stipulation it was agreed that the twenty-one properties on the east side of the street had a fair market value of $269,191.

Plaintiff's property is along the west side of Nineteenth Street. It is farmland improved and used as a dairy farm under a lease from plaintiff-owner to a tenant-operator. There are two

small homes and extensive improvements for the operation of a dairy farm located thereon. The property has not been subdivided but the north half has been zoned residential, most of the south half agricultural, with a small area in the south zoned industrial.

On the following plat plaintiff's property appears as Tract 2, Tracts 3 and Tract 4 in Lot 2.

Under the provisions of chapter 391, Code of Iowa, relating to street improvements, sewers and special assessments by cities and towns and prior to the amendments by the Sixtieth General Assembly, defendant-city caused Nineteenth Street to be paved. The paving was thirty-six feet wide with integral curbs. The paving was concrete six inches in depth reenforced with steel. The assessments against property were based on the cost of a paving twenty-five feet wide. The cost of paving in excess of twenty-five feet was to be paid as a general obligation of the city.

Pursuant to section 391.39 the special assessments were levied against all lots according to area so as to include one half of the privately owned property between Nineteenth Street and the next street, but not for more than 300 feet. The perimeter of the assessment area is shown by the heavy broken line on the plat.

Plaintiff appealed to the district court from the assessments levied by the city council. The district court reduced the assessments. Plaintiff, still dissatisfied, has appealed to us.

I. At the time the assessments were levied, section 391.53, Code of Iowa, provided for notice of proposed assessments by newspaper publication and posting. The resolution of the city council directed the appropriate publications and posting. In addition to the statutory notice the city clerk was directed to give notice to each property owner by certified mail. Notice as required by statute and the resolution of the council was given. An assessment notice was sent to plaintiff by certified mail.

Plaintiff filed objections attacking the assessments on fourteen numbered grounds including the constitutionality of the notice statute and the jurisdiction of the council to assess.

In 1963 the Sixtieth General Assembly amended section 391.53 of the Code by adding the following:

"The clerk shall send by certified mail to each property owner, whose property is subject to assessment for said improvement, as shown by the records in the office of the county auditor, a copy of the above mentioned notice, said mailing to be made on or before the first publication of said notice. Failure to receive such mailed notice shall not constitute a defense to the

special assessment.". Chapter 245, section 2, Laws of the Sixtieth General Assembly.

With this amendment the statute now requires the notice the city actually gave.

Plaintiff argues as his first proposition relied on for reversal that section 391.53 as it was in 1962 was violative of due process and unconstitutional.

Plaintiff relies on authorities starting with Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 70 S. Ct. 652, 94 L. Ed. 865, holding notice by publication inadequate.

The Mullane case is well known to the bench and bar. It requires no extensive analysis here. For our present purposes it holds that it is violative of due process to base jurisdiction upon published notice when better means of meeting the purpose of notice are available. We quote briefly from the opinion. Our local citations are to 70 Supreme Court Reporter. " 'The fundamental requisite of due process of law is the opportunity to be heard.' " (Loc. cit. 657)

Abundant authority, nowhere challenged, is in accord.

Plaintiff-appellant argues that a constitutional deficiency in a statute may not be corrected by an administrative or judicially ordered addition to the requirements of the statute. Plaintiff cites and relies heavily on Ridenour v. County of Bay, 366 Mich. 225, 114 N.W.2d 172. In that case the county and the city of Bay City attempted to create a county board of public works, set up a special assessment district and issue bonds incident to the construction of a sewage disposal system. When the proceedings were attacked by complaint in chancery seeking injunctive relief the court held that the statute providing only for notice by publication was violative of due process. The court then held that the constitutional deficiency was not cured by trial judge-imposed or administrator-imposed mailing of notice.

The reasoning in the opinion is impressive but not controlling here. It goes beyond what is said in the Mullane case and is factually short of the case at bar.

In the case before us there is an additional element not found in the Ridenour case, i.e., response of the property owner to the notice and the filing of objections with the assessing board or council and ruling thereon.

 As said in the Mullane case " 'The fundamental requisite of due process of law is the opportunity to be heard' ", and the constitutional validity of a method may be defended on the ground that it is reasonably certain to inform those affected.

Whatever constitutional deficiencies may have appeared in the statute the method actually used by the council was neither deficient nor ineffective.

Here plaintiff-appellant is a resident of Des Moines. He has owned the farm in adjacent West Des Moines for about forty years. The paving on Nineteenth Street goes past his farm for over 1500 feet. He knew of the improvement. The statutory notice was given. Notice by certified mail as now required was given. Plaintiff was given an opportunity to be heard and he availed himself of that right.

The reasons prompting the holding in the Mullane case and cases based thereon are absent here and the fundamental purpose of the holding in the Mullane case has been accomplished.

Adverting again to the Mullane case we note that there the only notice given was publication in compliance with the minimum requirements of the statute. The only notice by mail was at the time of the first investment in the common fund. (70 S. Ct. loc. cit. 655) The court said "we find no tenable ground for dispensing with a serious effort to inform them personally of the accounting, at least by ordinary mail * * *. Certainly sending them a copy of the statute months and perhaps years in advance does not answer this purpose." (Loc. cit. 659)

The court gave consideration to what is sound, prudent and practical. The court held that meeting the minimum requirements of the statute was inadequate but it did not hold that jurisdictional requirements could not be met by additional circumstances.

Approval of notice by mail was indicated as a practical method of supplementing publication and these words were quoted with approval: "Great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact." (Loc. cit. 660)

In the case at bar we have had the caution and fair play required by the constitution and the Mullane case.

■ The situation is not comparable to our special appearance cases where we have held that actual knowledge does not cure a defective original notice. A notice that fails to comply with the statute confers no jurisdiction. An action is commenced by serving an original notice. Rule 48, Rules of Civil Procedure. The contents of a notice are prescribed by rule 50 and the manner of service by subsequent rules. However, jurisdiction may also rest on a voluntary appearance, Baker v. Baker, 248 Iowa 361, 364, 81 N.W.2d 1, 64 A. L. R.2d 1421, and when so obtained defects in or lack of notice become immaterial.

Plaintiff-appellant has observed that there are no other appeals on this constitutional question and that as the statute has now been amended the issue will not likely recur. Such being the situation it is only necessary for us to hold that plaintiff's constitutional rights have not been violated by lack of due process of law. We need not pass on the constitutionality of the statute before amendment.

II. Section 391.48, Code of Iowa, provides that a "special assessment shall be in proportion to the special benefits conferred upon the property thereby and not in excess of such benefits. Such assessment shall not exceed twenty-five percent of the actual value of the lot at the time of levy, and the last preceding assessment roll shall be taken as prima-facie evidence of such value."

Plaintiff argues that the assessments against his property are violative of this statute.

By stipulation the parties agreed that the fair market value of twenty-one properties on the east side of Nineteenth Street was $269,191. According to plaintiff's computation the assessments against these properties amounted to only 3.64 percent of this valuation. Plaintiff says that by way of contrast the trial court allowed a full 25 percent assessment against his property.

The statutory limitations are set forth, supra.

■ There is nothing in the statute that says various assessments in relation to property value must be proportionate to each other nor that an assessment against an unimproved property may not be higher in relation to total value than an assessment against an improved property.

As long ago as 1916 our court in considering disproportionate assessments said in Benshoof v. City of Iowa Falls, 175 Iowa 30, 42, 156 N.W. 898:

"We would not lay great stress upon the fact that the two neighboring properties, which we have herein specified, were actually improved and that that of the plaintiff was not. We think the mere fact of improvement, or the failure to improve, is not the controlling question. Otherwise, one might be heavily assessed because he had constructed his improvements, and another might escape because he had deferred the construction of improvements upon his property until the paving assessments were fixed. We think, however, that suitability for the purpose of present improvement is always an appropriate consideration. And it may be conceded in this case that plaintiff's property was suitable for substantial and valuable present improvements, although it was on the outside limit of the business district of the town. We are clear also that, where property abuts upon an improved street and is thereby rendered assessable for the improvement, the depth to which such property extends is a consideration which ought not to be overlooked. It is a factor in the area of the property, and such area necessarily affects the benefit to be acquired from the street improvement by the abutting property."

True proportionate equality of assessment based on comparative market value of property affected by the improvement would be almost impossible of accomplishment, would effectually stifle any street improvement past properties of varying value and is not required by the statute.

The assessment against plaintiff's property is not invalid because of lack of equality in the percentage ratio of assessment to total value of the property as compared to improved property.

The assessment must represent a fair proportional part of the total cost. Rood v. City of Ames, 244 Iowa 1138, 1158, 60 N.W.2d 227, and cases cited therein.

Fairness in proportional cost is not determined by the percentage ratio of assessment to property value. The premise is not the same. The assessment on an unimproved lot might be proportional to total cost and at the same time be much higher

in relation to the lots' value than an assessment on an improved lot.

III. The statute provides that assessments shall be in proportion to the special benefits and not in excess thereof. Plaintiff argues that his property is farmland, that he has no need for or benefit from the paving and that the assessment is greater than the special benefits. The claim of no benefit is a common complaint in assessment cases.

As the court commented in Jackson v. Board of Supervisors, 159 Iowa 673, 678, 140 N.W. 849, "It may be that plaintiff will discover, after a few years' use of the property, that it has been benefited more than it appears to be, with this large assessment staring him in the face."

Plaintiff relies heavily on and quotes from Rood v. City of Ames, supra. That case involved assessments for construction of a storm sewer to provide drainage. Questions of topography, natural drainage, dominant and servient estates were important in determining benefits both actual and proportionate.

In a drainage case it is obvious that land naturally dry and with natural drainage receives less benefit than low and wet land. In the Rood case it appeared that the land in question was "high, dry and tillable at all times" except for a small depression or "pot hole" that was too low to be drained by the storm sewer. Plaintiff's high ground did not need the improvement and the low ground could not use it.

Here the premise is not the same. In the case before us, plaintiff's property has been and is used as a dairy farm. It has not been subdivided into lots. Plaintiff says he has no plans for subdividing and that the farm has neither need for nor benefit from the paving. His present entrance is from another highway. However, there is nothing in the record to indicate that plaintiff could not subdivide his property along Nineteenth Street and have as many entrances thereto as necessary. There is nothing to indicate that the part of the farm along Nineteenth Street could not be subdivided and used for residential and commercial purposes without materially interfering with the use of the remaining land as a farm. There would, of course, be some reduction in acreage but otherwise no reduction in utility or convenience.

The witnesses, including those called by plaintiff, agreed that the highest and best use of the property would be for subdivision purposes. Benefits are not necessarily limited by the present use of the property, as future uses and reasonably anticipated prospects may be considered. Rood v. City of Ames, supra, loc. cit. 1158 of 244 Iowa.

Gingles v. City of Onawa, 241 Iowa 492, 494, 41 N.W.2d 717, was a paving assessment case. Plaintiff claimed first that there was no benefit and second that the assessment was for more than the benefit derived. We said:

"We are convinced, as argued by defendant, that when a city council orders the paving of a street and provides that the cost shall be assessed upon the abutting property, it is a legislative determination that the improvement is expedient and proper and that there is a presumption that the property abutting on the improvement will be benefited thereby and that such determination cannot be set aside in a judicial proceeding."

The opinion then quotes with approval from Chicago, R. I. & P. Ry. Co. v. City of Centerville, 172 Iowa 444, 153 N.W. 106, as follows:

" 'Speaking generally, there is a fair presumption that all real estate receives some degree of benefit from the permanent improvement of a street upon which it abuts. It is upon such presumption that the whole system of special assessments for local improvements is justified and sustained. Acting upon such presumption, city councils have been clothed with a certain degree of legislative power to determine when it is expedient and proper to pave any given street or streets, and to provide, within certain limitations, how the cost thereof shall be defrayed. * * * the owner of abutting property may object that it has been overassessed, he cannot, if the proceedings have otherwise been regular, be heard to say that it is not liable to be assessed at all. * * *

" 'It certainly does not mean that, before such an assessment can be levied and enforced, the city must be able to show that, by reason of the paving, the abutting property has been advanced in market value to the extent of the assessment, or point out in detail the specific way and manner in which the requisite benefits are to be realized in the future. Were such to

be the rule, few, if any, schemes of local improvement at the expense of the property immediately affected could ever be accomplished. * * * the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement.' "

These pronouncements remain the law. Plaintiff's present limited use of his property as a dairy farm will not support his objections as to benefits.

IV. Plaintiff objects to defendant's method of assessment. Section 391.39 provides for assessment according to area with limitations as to distance from the improvement.

In computing the assessments the city engineer first determined the benefited area, i.e., halfway to the next block but not more than three hundred feet. By mathematical computation, involving frontage and depth factor, total cost, points of benefit and cost by point, the assessment was determined. It was based on the premise "that any square foot on the improvement pays the same assessment as any other square foot the same depth on the improvement." There is nothing in the record to indicate that a result other than contemplated by the statute was reached except as noted in the next division.

The assessments as finally made were by action of the city council.

We find nothing illegal or improper in the method of computing the assessments.

The area method which was the basis of the assessment is not invalid. Dunn v. City of Sioux City, 251 Iowa 1279, 1281, 104 N.W.2d 830.

V. Under the statute an assessment may not exceed 25 percent of the actual value of the lot involved.

As is frequently the case there was a wide variation in the testimony of the valuation witnesses.

A witness for plaintiff placed a value of $500 per acre on the farm as a dairy farm. For other purposes he placed the value

at $1250 per acre. For plaintiff's 10.98 acres in the assessment district he placed the value at $2000 per acre. However, because of the shape and depth of the property it could not all be developed to that full value.

Other witnesses valued plaintiff's 10.98 acres involved as high as $60,000 and the value per front foot as high as $60.

The council placed a valuation of $38,900 on item 2; $15,225 on item 3 and $3500 on item 4.

 The farm was subject to a lease with an unexpired term of three years with a renewal option for five years. Because of this lease the trial court concluded that the values as found by the court should be discounted at the rate of 1½ percent per year or a total of 12 percent. We find nothing in the record to indicate how much the values should be discounted because of the lease but the figure used by the trial court would appear reasonable and as the city has not appealed we accept the court's computation thereof.

The trial court reduced the valuations and assessments on each of plaintiff's tracts.

The trial court found the reasonable market value of item 2 to be $25 per front foot or a total of $27,786. Discounting this 12 percent leaves a value for assessment of $24,452. We agree with the trial court as to this item.

The trial court found the reasonable market value of item 3 to be $25 per front foot or a total of $8400. Discounting this 12 percent leaves a value for assessment of $7392.

To what extent this takes into consideration the area of the lower tract numbered 3 does not appear but we agree with the valuation fixed by the trial court as to this item.

Item 4 is a small tract triangular in shape except for a curving frontage on Nineteenth Street. The evidence as to its value is meager. There is evidence that it has a frontage of about 140 feet on the curve in Nineteenth Street. Its depth is up to 50 feet. It varies from two to four feet below street level and is subject to overflow. Its location would be suitable for commercial purposes but its use would require considerable filling.

When broken down as to separate tracts evidence for the

plaintiff placed a value thereon of $400. Testimony for defendant-city placed the value at $1000.

The trial court placed the value on item 4 at $2000, discounted 12 percent leaving a value for assessment purposes at $1760.

We believe this figure is beyond support in the evidence. We determine the value to be $1000 subject to the court's discount of 12 percent leaving an assessment value of $880.

The assessment is limited to 25 percent of value.

The assessments fixed by the court in the sum of $6113 against item 2 and $1848 against item 3 are approved and affirmed. The assessment against item 4 is reduced to 25 percent of $880 or the sum of $220.

Except for the modification as to item 4 the case is affirmed. —Modified and affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON, MOORE and STUART, JJ., concur.

LARSON and THORNTON, JJ., concur except as to Division I.

HAYS, J., not sitting.