Spencer J. MULFORD and Erma Irene Mulford, husband and wife, Appellees,

v.

CITY OF IOWA FALLS, Iowa, Appellant.

Joseph R. WHITE and Doris White, husband and wife, Appellees,

v.

CITY OF IOWA FALLS, Iowa, Appellant.

James B. LINDSAY and Winifred A. Lindsay, husband and wife, Appellees,

v.

CITY OF IOWA FALLS, Iowa, Appellant.

Andy E. McCOMB and Dorothy V. McComb, husband and wife, Appellees,

v.

CITY OF IOWA FALLS, Iowa, Appellant.

No. 55925.

Supreme Court of Iowa.

Aug. 28, 1974.

**262**

DuWayne J. Wessels, Iowa Falls, for appellant.

Barker, Hansen & McNeal, Iowa Falls, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

Plaintiffs, four landowners in Iowa Falls, appealed to the Hardin district court contesting the validity of sanitary sewer improvement assessments made by the City Council of Iowa Falls against their land. In a consolidated trial the court reduced the assessment on each parcel of real estate. The City appeals from the court's decree.

It was determined by the City of Iowa Falls that a sanitary sewer line was needed to serve the new Iowa Falls High School and homes along Siloam Road which had been using private septic tanks. The impetus to build the extension apparently came partly from the need to service the new school and projected service of plaintiff Mulford's proposed development in the Hickory Heights area. Although various routes were possible the one finally chosen served the school, and the property owners along Siloam Road.

Jack Clapsaddle, city engineer, prepared plans for the sewer extension and proposed assessments for benefited property owners. Clapsaddle testified there is no set formula for deciding how much of the total cost either the City or landowners would pay but that the City traditionally paid such things as sewage pumping stations and river crossings. From a preliminary estimate of the total cost of the project and knowledge of how many front feet would abut each piece of property, Clapsaddle was able to estimate total assessment and also a cost per front foot. He determined the cost per front foot to be $4.13. In arriving at a preliminary assessment for each property owner this amount was multiplied by the number of front feet, then adding a so-called direct benefit of $50.00 which is in effect a sewer hookup charge for existing residences. When the final cost exceeded the estimate by 32 percent, 10 percent extra was added to assessment. (Only 10 percent is allowed under section 391.49, The Code, 1966).

It was stipulated that the total cost of the sewer project was $176,743.62 of which $53,833.49 was assessed against the property owners whose land was serviced by the improvement; the balance was to be paid by the City.

City Council members thereafter inspected the properties to set values, benefits, and insure that each assessment was legally proper. At the time of their inspection the council knew Clapsaddle's estimate, the frontal foot rate and the formula used by him. The council admittedly inspected the various properties, as plaintiffs correctly state, by merely "eyeballing" the situation. No expert opinion as to valuation or benefit was employed or used by the council. Overall, their examination was inexact and unscientific. Although no expert opinion was gathered, no measurements were made, and various topographical problems were not considered, the council managed to determine that future development possibilities in the nature of additional building lots were present on each parcel. The various valuations were in some cases radically different from the county assessor's previous 100 percent valuations.

After hearing objections pursuant to law the council made no adjustment on the Lindsay, White and McComb properties. Some adjustment was made as to plaintiff Mulford. Although members of the council testified that future use of the land was taken into consideration, the final assessment was exactly the same as Clapsaddle's original estimate which was based solely on the front-foot calculation. City manager and city clerk, Don Nichols, testified the final assessment by the council ended up based on a frontal foot calculation.

Plaintiffs presented expert opinion evidence by two or more experienced real estate brokers as to the value of each parcel of land, or the benefit received. The individual landowners also testified as to value and to benefit to be received from the sewer connection. The following applies to each parcel of land as shown by the written record, the trial court's findings and plaintiffs' brief.

Plaintiff Mulford owned tracts 45–48 which consisted of 13.6 acres; these tracts were assessed together. Elk Run Creek flows through these tracts and, except for tract 48, floods them at least once a year. The land is used only for pasture and is considered unsuitable for development by real estate experts because of the flooding problem. This was the property which Mulford originally bought with the hope of future development. He invested $12,300 in surveys, maps and feasibility studies only to learn that development of the total area of 70.2 acres, of which these tracts are a part, was commercially unfeasible. The following table taken from plaintiffs' brief and the written record summarizes the evidence in regard to the valuation of tracts 45–48:

| | | |
|---|---|---|
| Original acquisition costs, 13.6 acres x $500 per acre | | $ 6,800.00 |
| 1968–1970—100 percent assessor's valuation of tracts. (This figure is arrived at by calculating value per acre from Mulford's total acreage; 1970 valuation on the total 50 acre estate was $10,-500; 1971—$7,590) | | 2,856.00 |
| Expert opinion valuation of tracts | (a) | 8,400.00 |
| | (b) | 8,580.00 |
| | (c) | 10,000.00 |
| City Council's valuation | | 40,000.00 |
| Trial court's finding | | 12,000.00 |

The council's valuation was based on the opinion that the tracts contained 8–10 building sites worth $4,000 to $5,000 each.

Plaintiff Mulford also owned tract 51, a parcel of land of 6.3 acres. This land lies below the level of Siloam Road and drains a water shed of about 11,000 acres. The soil is unstable, standing water was found three feet below the surface, and the area is flooded at least once a year and possibly as many as three times annually by Elk Run Creek. Because of these problems the real estate experts testified it would not be economically feasible to develop the tract; its sole use is pasture. Mulford's original purpose to develop the property was again frustrated by the nature of the land itself.

The following table summarizes the evidence concerning tract 51:

| | | |
|---|---|---:|
| Original acquisition cost | | $ 2,079.00 |
| Assessor's 100 percent valuation. (Calculated on per acre basis from total amount valuated; 1970, the assessment value for 20.2 acres was $4,000; 1971—$1,800) | | 1,247.00 |
| Expert opinion valuation | (a) | 409.50 |
| | (b) | 630.00 |
| | (c) | 1,260.00 |
| | (d) | 1,450.00 |
| City Council valuation | | 15,000.00 |
| Trial court's valuation | | 2,000.00 |

The council's valuation was based primarily on the opinion that additional building sites were present.

There was also a large difference in regard to the projected benefit to Mulford's property from installation of the sewer.

The following table summarizes the evidence as to benefit to tracts 45–48:

| | | |
|---|---|---:|
| Expert opinion | (a) | $ 2,000–2,500 |
| | (b) | 500.00 |
| City Council finding | | 5,101.79 |
| Trial court's finding | | 2,486.00 |

The experts' benefit figures are apparently based on the belief some future building sites were present.

The following table summarizes the evidence as to the benefit to tract 51:

| | | |
|---|---|---:|
| Expert opinion | (a) | No benefit |
| | (b) | No benefit |
| | (c) | No benefit |
| City Council finding | | $ 3,750.00 |
| Trial court's finding | | 500.00 |

Experts found no benefit because they believed the tract was completely unsuitable for building of homes.

Plaintiff Lindsay owned 2.8 acres (tract 54) on which there was a sixty-year-old home, four-stall garage, small storage shed, and barn. There could be an additional homesite on the property but some of the buildings would have to be torn down to make room for it. Since purchase of the land Lindsay had used a septic tank and had encountered no problems and little expense for it. This property extended 441 feet along Siloam Road. The council's final assessment of $2,053.46 may be seen to have been calculated by the front-foot method ($4.13 x 441 equals $1,821.33) plus hookup fee ($50) plus 10 percent overrun charge. The following is a summary of the evidence in regard to the benefit to tract 54:

| | | |
|---|---|---:|
| Lindsay's opinion | | $ 500–600 |
| Expert opinion | (a) | 300–500 |
| | (b) | 500 |
| | (c) | 200–300 |
| City Council finding | | 2,053.46 |
| Trial court's finding | | 741.00 |

Plaintiff White owns 5.5 acres (tracts 55 and 56) on which is a home and barn with two-stall garage. Two ditches run through the tracts and drain a small amount of land, but are generally dry. Plaintiff is a high school vocational agricultural teacher and bought the land so that his two boys could raise livestock as projects; the land is thus used for pasture. White expressed no present intent to subdivide his land. White purchased the acreage in 1968 for $23,500. Although the county assessor's valuation is unknown from the record, the council valued the land at $4,500 and levied a final assessment of $817.74. One hundred eighty feet of tract 55 fronts on Siloam Road; the final assessment can therefore be seen to have been reached by the front-foot method ($4.13 x 180 equals $743) plus hookup fee plus 10 percent overrun charge. Tract 56 has 256 feet fronting on Siloam Road and is used solely as pasture. Its final assessment of $1,213.-01 was arrived at in the same manner as above. The council found that benefit to the tracts was $2,030.75, in other words, the sum of the assessments of tracts 55 and 56 as calculated on the front-foot method. The following summarizes the evidence as to the benefit to tracts 55 and 56:

| | | |
|---|---|---:|
| White's opinion | | $ 500–600 |
| Expert opinion | (a) | 300–500 |
| | (b) | 500 |
| | (c) | 300 |
| City Council assessment | | 2,030.75 |
| Trial court's finding | | 936.00 |

The council's assessment was based on the opinion that additional building sites were present on the property.

Plaintiff McComb owns 2.6 acres (tract 57) with his home centered on the property. There is a steep rise behind his house and a flat area above that. He had no present intent to sell off any of the tract for building sites. A septic tank had been used since 1965 and caused no problems. This parcel is somewhat triangular with 463 feet fronting on Siloam Road. The council's final assessment of $2,153.41 was calculated by the frontal-foot method plus hookup fee plus 10 percent overrun charge. The following is a summary of the evidence as to the benefit he received:

| | | |
|---|---|---|
| McComb's opinion | | $ 300.00 |
| Expert opinion | (a) | 300–500 |
| | (b) | 500 |
| City Council assessment | | 2,153.41 |
| Trial court's finding | | 963.00 |

It was alleged as a theory for relief in each of the four petitions the assessments were wholly illegal, null and void because the "front-footage" method employed by the city council in making the assessments did not effect the ascertainment of just and equitable assessments against their properties but rather resulted in arbitrary assessments which bore no relationship to the benefits conferred among or between the several properties assessed for the improvement. It was further alleged the assessments on all tracts were excessive as they exceeded the special benefits conferred and were inequitable in that the assessments against plaintiffs' properties are in a much larger amount in proportion to the benefits to their property than are other assessments. In Mulford's and White's petition it was alleged the assessments exceeded 25 percent of the actual value of their property in violation of section 391.-48, The Code.

The trial court found, "the method used by the City Council in determining the benefits on the tracts of the plaintiffs * * * was in essence consideration of the front-footage method only, which under the ruling in the case of Rood vs. City of Ames [244 Iowa 1138, 1160–1161, 60 N. W.2d 227, 240] is prohibited."

The court held the assessments made against each of plaintiffs' property exceeded the value of the benefits conferred on the respective parties by the improvement and reduced the assessments in each case as indicated in the foregoing tables.

Defendant's appeal presents the issues whether the trial court erred in determining the assessments in question were in essence consideration of the front-footage method only and whether the court erred in finding the front-footage method was an invalid method of assessment.

Our review is de novo. Rule 334, Rules of Civil Procedure.

Two statutes are primarily involved in this matter. Section 391.42, The Code, provides:

"Cost of sewers. The cost, or any part thereof, of the construction, reconstruction, or repairing of sewers, * * * may be paid from the sanitation fund: and the portion thereof not so paid shall be assessed against the property abutting on such sewer in proportion to the number of linear front feet of each lot thereof, and upon adjacent property in proportion to the benefit thereto; but in estimating the benefits to result therefrom to adjacent property, each lot shall be considered as wholly unimproved. Said methods of assessment may be combined."

Section 391.48 is in this language:

"Assessment—rate. When any city council levies any special assessment for any public improvement against any lot, such special assessment shall be in proportion to the special benefits conferred upon the property thereby and not in excess of such benefits. Such assessment shall not exceed twenty-five percent of the actual value of the lot at the time of levy, and the last preceding assessment roll shall be taken as prima-facie evidence of such value."

As we view the decree the court interpreted section 391.48 as limiting any spe-

cial assessment to the special benefits conferred and in any event such assessment could not exceed 25 percent of the assessed value of the property even though the amount of the special benefit would be greater.

In this light assessments were reduced in regard to Mulford's and White's property because they exceeded the 25 percent of the actual value and assessments to other plaintiffs were reduced because they exceeded the special benefits.

■ I. Defendant insists the trial court's conclusion that the method used by the council in determining the benefits conferred on plaintiffs' property was in essence consideration of the front-footage method only was error.

In support of this contention particular reference is made to testimony by city council members in regard to their assessments. Defendant refers to the council's consideration of the potential subdividability of plaintiffs' property into desirable homesites as a basis for sustaining assessments made by the council. In respect to the property of Mulford, Lindsay, White and McComb the council considered future development in determining each valuation or special benefit. Specifically, additional lots were considered present in each parcel; the extension of the sewer line was considered as changing the parcels from country estates to city lots.

■ The consideration of future uses, reasonably to be anticipated, may be considered in determining the benefit to property to be assessed. Beh v. City of West Des Moines, 257 Iowa 211, 220–221, 131 N.W.2d 488, 494 and Wharton v. City of Oskaloosa, 158 N.W.2d 834, 835 (Iowa 1968).

Members of the council admit, however, their personal inspection of the properties was merely a physical viewing of the premises, they merely "eyeballed" the situation. They themselves were not experts in real estate matters and employed no experts. No drawings of the properties were used to determine if additional building sites were present; they did not have or use any measuring device to determine if the projected additional lots would be consistent with applicable Code provisions. The record shows that various drainage and flooding problems were not considered by the council in making the assessments. The council's action may be summarized by this testimony of councilman George Vest: "We stood in the street and eyeballed the property and said 'Here is a building site, here is a building site, and here is a building site.' It was strictly an eyeball situation."

As indicated, the city engineer testified the general benefit figures were arrived at by multiplying the number of abutting front feet times $4.13. He did not recall the council instructing him to use potential subdividability of the properties as a factor and to the best of his knowledge no other factors other than the front foot basis were used in arriving at the assessments for Lindsay, White and McComb properties.

The city manager testified there was a direct mathematical relationship between the assessment and the front footage of each parcel in that the general benefit was calculated by multiplying the number of front feet times $4.13. To the best of his knowledge no dollar figure was used by the council for potential subdivision.

Most detrimental to the defendant's argument that the front-foot method was not the sole consideration is the fact the final assessments as to plaintiffs were exactly the same figure derived from use of the front-foot calculation made by the city engineer in his preliminary estimate. Of course, to this figure was added the $50 hookup charge where a residence existed and 10 percent because of the overrun. Although several councilmen stated this was a coincidence, the facts cannot be disputed.

Of a total of 61 tracts, all but three (44, 49 and 58) had the assessment determined by multiplying the front footage by $4.13, adding a direct benefit of $50.00 if a dwelling was presently going to be attached to the sewer, and then adding 10 percent to the original front footage figure. The exception to this generalization is with regard to tracts 45, 46, 47 and 48, where only one side of the sewer was considered in assessing a front footage.

Furthermore, testimony of councilman Vest would seem to show it was the design of the council to arrive at the final valuation by use of this method. He testified: "In each and every case with respect to White, Lindsay, and McComb the final assessment as adopted by the City Council of the City of Iowa Falls consists of the following factors: A preliminary assessment calculated by taking the number of front feet times $4.13 per front foot, adding to that a sewer hookup fee for $50.00 for each residence and then adding to that figure a 10 percent overfinal assessment figure."

In relation to Mulford's property, tract 51 had a front footage of 951 feet. This times $4.13 produced a preliminary assessment of $3,927.63. This assessment on the front foot basis exceeded 25 percent of the actual valuation placed on this tract by the council at $15,000. The council's valuation at $15,000 was made even though the county assessor had previously valued 20.2 acres (of which the 6.13 acres of tract 51 is a part) at only $4,000. The council thus more than tripled the full amount of the assessor's valuation for one-third of the property.

Councilman Vest further testified the assessment for tracts 45–48 was determined by calculating the front-foot method (but only as to one side of the sewer) plus 10 percent overrun. Tracts 45–48 had a front foot assessment of 1,123 feet. The preliminary assessment was $4637.99 which is a multiplication of the front footage times $4.13. The final assessment was $5101.79 which is the preliminary assessment plus 10 percent. As indicated, the council's valuation of this land was $40,000.00.

The calculation of the assessments, as well as the testimony of council members themselves, conclusively establishes they were made by a front-foot calculation only.

It is obvious the council started out with a front foot figure, viewed the property, and made no adjustment up or down with respect to the Lindsay, White and McComb properties and ended up where they started with a front foot figure.

■■■ In equity matters, such as this, where our review is de novo it is this court's responsibility to review the facts as well as the law and adjudicate rights anew on those propositions properly presented, provided issues have been raised and error, if any, preserved in the course of the trial court's proceedings. While weight will be given to the findings of the trial court this court will not abdicate its function as triers de novo on appeal. In Re Marriage of Williams, 199 N.W.2d 339, 346 (Iowa 1972).

Based on this type of review it is the opinion of the court that examination of the premises by members of the council, as previously described, was in the nature of a mere formality and had no effect on the final assessment.

This impels the conclusion the council employed the front-foot method only in determining the benefits conferred on plaintiffs' property without regard to all other factors.

II. In view of the foregoing determination we consider defendant's argument that the trial court erred in finding the front-foot method of assessment to be an invalid method.

■■ Defendant's argument is based solely on the wording of section 391.42, set out earlier. To a certain extent defendant is correct because the front-foot method is *a* proper method of assessment. It is clear,

however, that the front-foot method cannot be the sole method of valuation. Rood v. City of Ames, 244 Iowa 1138, 1160–1161, 60 N.W.2d 227, 240; Wharton v. City of Oskaloosa, 158 N.W.2d at 835. See also H. L. Munn Lumber Company v. City of Ames, 176 N.W.2d 813, 815 (Iowa 1970).

Defendant maintains that section 391.42 is a specific statute whereas section 391.48 is a general one and since the two conflict 391.42 must prevail. This argument is essentially an attempt to circumvent the principle of *Rood* and *Wharton* by resort to rules of statutory construction.

■ Section 391.48 is a specific limitation on the amount that may be assessed. To follow defendant's argument would mean that if the front-foot method resulted in an assessment greater than would be allowed under 391.48 (e.g. assessment greater that 25 percent of value) such must be used. This is clearly contrary to the legislative intent manifested in section 391.48, and also contrary to the holdings of *Rood* and *Wharton*. The trial court's interpretation of section 391.48 mentioned earlier is correct.

Defendant's argument based on statutory construction rules is without merit.

III. There remains the question of whether the assessments finally set by the trial court should stand. Defendant insists the trial court should not have made any reduction whatsoever in the assessments determined by the council. Plaintiffs, on the other hand, argue strongly each reduction should be sustained.

In Goodell v. City of Clinton, 193 N.W. 2d 91, 93 (Iowa 1971), several governing principles repeatedly announced by this court in assessment cases are set forth with supporting authorities.

■ There is a presumption that assessments made by a city for improvements are correct; the burden rests on the protesting property owner to prove otherwise. Brenton v. City of Des Moines, 219 Iowa 267, 269–270, 257 N.W. 794, 796; Gingles v. City of Onawa, 241 Iowa 492, 498–499, 41 N.W.2d 717, 720–721; Wharton v. City of Oskaloosa, 158 N.W.2d at 836. It is included in this presumption that there is some benefit and that the assessment does not exceed the special benefit accruing from the improvement. Goodell v. City of Clinton, 193 N.W.2d at 93. Thus, where there is no evidence to support a finding contrary to that of the city council its· determination must stand. Wharton v. City of Oskaloosa, 158 N.W.2d at 835 and authorities cited.

There is substantial evidence in the record as to the proper valuation of the properties at time of levy and of the value of the actual benefits derived from construction of the sewer. At least two experts and often three testified as to the value or benefits concerning each parcel of property. In addition each plaintiff placed a value on his property and a value on the actual benefits conferred by the improvement.

■ We find from our de novo review plaintiffs sustained the ˙burden cast upon them; the presumptions that the assessments made by the council were correct and did not exceed the special benefits accruing from the improvement were overcome.

In Wharton v. City of Oskaloosa, 158 N.W.2d at 837 and again in Goodell v. City of Clinton, 193 N.W.2d at 96, we recognized the trial court's task in determining proper assessments as "difficult, complicated, and technical." This is true here.

■ The ultimate question is whether the amount levied on a tract constitutes its fair proportion of the total cost. Spencer Shopping Center, Inc. v. City of Spencer, 200 N.W.2d 513, 515 (Iowa 1972).

As stated, in the Mulford and White cases the assessments were reduced because they exceeded 25 percent of the actual value. Assessments as to other plaintiffs

were reduced because they exceeded the special benefits conferred.

We decline to disturb any of the assessments made by the trial court in the cases before us since we believe they are correct in each instance as representing a fair proportion of the total cost.

The cases are therefore, affirmed.