Gregory L. UHLENHAKE and Alma A. Uhlenhake, Appellants,

v.

CITY OF OSSIAN, Iowa, Appellee.

No. 86–1545.

Supreme Court of Iowa.

Jan. 20, 1988.

Andrew P. Nelson and Isadore Meyer of Meyer, Lorentzen & Nelson, Decorah, for appellants.

Andrew F. Van Der Maaten and Lee E. Wilmarth of Anderson, Wilmarth & Putnam, Decorah, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

This appeal emanates from a special assessment levied by the City of Ossian for the cost of a street-paving project. Gregory and Alma Uhlenhake, owners of agricultural property located in the city, brought an action in equity challenging the assessments levied against their land. The action was dismissed following trial. Uhlenhakes appealed.

The Uhlenhakes raise two issues. First, they claim that the city improperly denied their request for an agricultural deferment on the parcel of land where their residence was located. *See* Iowa Code § 384.62 (1983). Second, they contend that the assessments against the remaining three parcels were excessive. We hold that the Uhlenhakes were not entitled to an agricultural deferment on the parcel where their residence was located, but agree that the assessments on the other three parcels were excessive. Thus, we affirm in part, reverse in part and remand for the entry of a decree consistent with this opinion.

I. *Factual background.* On September 10, 1984, the Ossian city council voted to improve Hall Street by paving it. The council determined that the land abutting Hall Street, extending back 150 feet, would be specially benefited by the improvement and decided to assess costs for the improvement against that property. *See* Iowa Code § 384.42(2)(d). The council adopted a preliminary plat and schedule showing the value of the benefited property and the proposed assessments against it. *See* Iowa Code §§ 384.42, .43, .45, .46, .47. The property to be assessed included land owned by the Uhlenhakes.

The Uhlenhakes own and operate a farm which lies partly within the Ossian city limits. All of their property is assessed as agricultural for tax purposes including their residence which is within the city on land adjacent to Hall Street. The city map, which was drawn from county records and survey, shows that the Uhlenhake property within the city is platted and located in five lots designated as "lot 1 of 12" through "lot 5 of 12." We provide a sketch of these lots as a reference to our discussion.

The assessment plat prepared by the city council in September, divided the Uhlenhake property into four parcels. The land, as divided by the city council for assessment purposes, will be referred to as "parcels" throughout this opinion in order to avoid confusion with the designation of "lots" in the legal descriptions. The boundaries of these parcels do not correspond to the lots as designated in the city map and the illustration provided above. The parcel boundaries exclude portions of the numbered lots not owned by Uhlenhakes, and one of the parcels, 1C, included Uhlenhakes' land from both lot 1 and lot 3. These special assessment parcels were originally designated and generally described as follows:

Parcel 1A – the west 150 feet of Uhlenhakes property in lot 5.

Parcel 1B – the west 150 feet of lot 4.

Parcel 1C – the west 150 feet of lot 3 and the south 6 feet of lot 1.

Parcel 1D – the west 64 feet of lot 2.

In October 1984, Uhlenhakes filed a petition in equity asking the court to review the valuations of and assessments against these parcels. On November 5, 1984, while this action was pending, the city council amended the plat and schedule of assessments. The amendment involved deleting the east fifty feet of lot 3 from parcel 1C, the parcel surrounding Uhlenhakes' dwelling, and adding it to parcel 1B. Uhlenhakes recast their petition to conform to the amendment. Over Uhlenhakes' continued objection the council gave final approval to the amended plat and schedule of assessments on March 5, 1985. *See* Iowa Code § 384.51.

The final valuations and assessments of the Uhlenhakes' property are as follows:

| Parcel | Valuation | Assessment |
|--------|-----------|------------|
| 1A | $15,600 | $3179.15 |
| 1B | $11,400 | $1980.97 |
| 1C | $17,400 | $1581.12 |
| 1D | $ 8000 | $ 722.53 |

■ II. *Agricultural deferment.* When a special assessment is made against agricultural property, the property owner

may defer payment of the special assessment until the property is no longer agricultural. Iowa Code § 384.62. This right of deferment "shall not apply to a tract of land of less than one-quarter acre surrounding any dwelling or non-farm structure on that tract...." *Id.*

The parties agree that all of the parcels in question are used and assessed as agricultural property and that Uhlenhakes properly requested a deferment. However, the city refused to grant Uhlenhakes' request for a deferment on the assessment against parcel 1C, because, as amended, it is less than one-quarter acre and contains a dwelling.

■ Uhlenhakes argue that the city's final division of their property into parcels for assessment is improper because it does not coincide with preexisting legal descriptions, and because it ignores the fact that parcels 1C and 1B, as originally divided on September 10, 1984, are separated from each other by a fence and are used for different purposes. Uhlenhakes also argue that the plat amendment on November 5, 1984, which reduced parcel 1C to less than one-quarter acre was improper because it was specifically aimed at defeating their right to an agricultural deferment. Because the authority to designate parcels of land and assess this private property for public improvement is statutory, *see* Iowa Code § 384.38(1), we turn to the statutes to determine whether the city acted properly.

■ In construing statutes we are guided by certain rules of construction designed to help us ascertain and give effect to the intention of the legislature. Here, two principles of construction are pertinent. First, we look to what the legislature said rather than what it should or might have said. Iowa R.App.P. 14(f)(13). Second, we give effect to the purposes behind the legislation. *See Janson v. Fulton,* 162 N.W. 2d 438, 442 (Iowa 1968).

■ In order to make a special assessment against private property, a city must adopt and file an assessment schedule that includes a "description of each lot (parcel) to be assessed." Iowa Code § 384.59(1). A "lot" (parcel) is defined as:

a parcel of land under one ownership, including improvements, against which a separate assessment is made. Two or more contiguous parcels under common ownership may be treated as one lot for purposes of this division [of the code] if the parcels bear common improvements or if the council finds that the parcels have been assembled into a single unit for the purpose of use or development.

1983 Iowa Code Supplement § 384.37(5).

■ The plain language of these two sections simply does not support Uhlenhakes' contention that the city acted improperly in dividing their land into parcels to be assessed. There is no indication in these statutes that the city must follow legal descriptions adopted from earlier platting or give effect to artificial boundaries such as a fence. The broad definition of "lot" as "a parcel of land ... against which a separate assessment is made" indicates that the city can divide land however it wants and is restricted only by the requirement of single ownership. We believe that it would be inappropriate to add to what the legislature has said and require the city to follow preexisting legal descriptions or artificial boundaries.

■ Additionally, the purposes behind special assessments and agricultural deferments support this interpretation of the city's power to divide land into parcels for assessment purposes. The dominant purpose of special assessments is to require reimbursement to the city from property owners who receive special benefit from public improvements. *See Goodell v. City of Clinton,* 193 N.W.2d 91, 94 (Iowa 1971). Under this scheme, persons who receive special benefit are required to help bear the cost of the benefit they receive. To accomplish this goal the legislature has provided broad authority to the city to determine what property will be specially benefited, Iowa Code § 384.51, and to divide the property into lots for assessment purposes, Iowa Code §§ 384.42(2)(d), .45(2), .47(1).

The purpose behind allowing an agricultural deferment under section 384.62 is

also obvious. The legislature recognized that agricultural property generally does not receive the same immediate benefit from public improvements as does other land. As long as the land remains agricultural and does not receive the full benefit of the improvement, payment of the assessment may be deferred until the use is changed. *Id.*

The legislature made agricultural deferments subject to two exceptions. These exceptions illustrate that the purpose behind special assessments and the agricultural deferment is to impose costs for the improvements on the land which receives the benefit. Deferment is not available for "tracts of land less than one-quarter acre surrounding any dwelling or non-farm structure." *Id.* In addition, deferment is not available when the improvement is a sewer, water, gas or electrical line to which the owner of the land makes a connection. *Id.* It is clear that both these exceptions are designed to impose costs on those who benefit from the improvements.

Although property may be part of a farm that is assessed as agricultural land, the owners of a dwelling or non-farm structure on the property generally use public streets in the same manner and proportion as do their urban neighbors and receive a similar immediate benefit from the improvement. Thus, the exception for one-quarter acre surrounding any dwelling or non-farm structure is appropriate. The overall purpose of reimbursement for special benefit is served by giving the city broad authority to designate assessment lot lines in order to promptly seek reimbursement from owners of benefited dwellings and non-farm structures. The general integrity of the agricultural deferment is protected by the limitation of the exception to one-quarter acre.

In the present case, the city's division of Uhlenhakes' property was consistent with the plain language of the relevant statutes and with the purposes behind the exception to agricultural deferment. As homeowners, the Uhlenhakes receive immediate benefit from the street improvement. The facts show that parcel 1C is land primarily used as a dwelling. The fifty feet taken from the original 1C and added to form the amended 1B is a farmyard that fits in appropriately with the rest of 1B, a calf pasture. The division of the Uhlenhakes' property which created a parcel that fell within the exception to deferment was consistent with the purposes behind our provisions on special assessments. We hold that it was not shown that the city acted improperly in denying the deferment on 1C.

III. *Assessments.* There is no dispute concerning the legal principles that apply when a property owner challenges a special assessment as being excessive. The property owner bears the burden of proving that a special assessment is excessive. *Goodell,* 193 N.W.2d at 93. On appeal, we examine the evidence de novo to determine if the property owner has met this burden, although weight may be given to the trial court's findings. *Id.* at 95. The city council's determinations of value and amount of assessment are presumed correct. *Id.* at 93. Where the property owner is able to meet its burden of proof, this court may reduce the assessment imposed to a proper amount. *Knudsen v. City of Des Moines,* 254 N.W.2d 1, 5 (Iowa 1977); *see* Iowa Code § 384.54(7).

The legislature has placed two limitations on the amount of an assessment. Iowa Code section 384.62 states that, "an assessment may not exceed twenty-five percent of the value of the lot as shown by the plat and schedule approved by the council or as reduced by the court," and section 384.61 states that an assessment may not exceed the "special benefits conferred upon the property" by the improvement. A special assessment which exceeds the lesser of these two amounts is excessive and may be reduced by this court. *See City of Clive v. Iowa Concrete Block & Material Co.,* 298 N.W.2d 585, 589 (Iowa 1980).

A. *Did assessment exceed 25% of the property's value?* The city council is required to make a valuation of the property to be assessed. Iowa Code

§ 384.46. The value to be determined is "the present fair market value of the property with the proposed public improvement completed." *Id.* The only purpose behind this valuation is to ensure that the assessment against the property does not exceed 25% of its value. *City of Clive*, 298 N.W. 2d at 589. We must first decide the proper date for valuation and then decide whether Uhlenhakes have proven that the assessments exceeded 25% of the property's value on that date.

Section 384.46 says that property is to be valued "[u]pon completion of the plat." Therefore, we must determine when the plat was completed. The trial court ruled November 5, 1984 was the proper valuation date. This was the date the city council approved and adopted the parcel descriptions and assessment schedule in final form. We agree that this date is the proper time for valuation under section 384.46.

▋ We must now decide whether the Uhlenhakes met their burden of proving that the assessment against their property exceeded 25% of its fair market value on November 5, 1984. The evidence presented at trial by the Uhlenhakes included Alma Uhlenhake's testimony on her opinion of the land's value and an expert's appraisal of the land dated April 25, 1986. The city's appraiser valued most of the property as of November 5, 1985. All of the expert witnesses admitted that property values were decreasing between 1984 and 1986.

The trial court found that Uhlenhakes' expert appraiser was the most persuasive and made findings of fact as to the fair market value of the property in April 1986 based on his appraisal. The court then concluded that this evidence was not sufficient to meet the burden of proving value on November 5, 1984.

In our de novo review we agree with the trial court that the testimony of Uhlenhakes' appraiser was most credible. However, we determine that Uhlenhakes have met their burden of proof. After testifying to land values in April 1986, Uhlenhakes' appraiser stated that there would be a slight reduction in value between 1984 and 1986. The city's appraiser indicated that

there had been a 10% to 20% decrease in values between the 1982–83 period and 1986.

While it would have made matters simpler if Uhlenhakes' appraiser had used the November 1984 valuation date, his failure to do so in the present case only goes to the weight to be afforded the evidence and does not cause us to disregard it. In this equity case we take into account that both parties were confused by the valuation date and presented evidence of value on dates other than November 1984. More importantly, both parties supplied credible evidence as to the amount of the decrease in value during this time period. This allows the fact finder to adjust the April 1986 appraisal in order to arrive at the November 1984 value without engaging in speculation or conjecture.

We find that the April 1986 values stated by Uhlenhakes' appraiser equal 90% of the fair market values on November 5, 1984. Based on this finding we hold that the Uhlenhakes have sufficiently proved the value of their property on the valuation date. We need not determine the exact fair market value of parcel 1C as this assessment, under plaintiffs' evidence, clearly does not exceed 25% of its value. The proper values for the remaining parcels, and the maximum legal assessments under section 384.62 are as follows:

| Parcel | Nov. 5, 1984 Value | Maximum Allowable Assessment |
|---|---|---|
| 1A | $8333.33 | $2083.33 |
| 1B | $5277.78 | $1319.44 |
| 1D | $1666.67 | $416.67 |

To the extent that the assessments imposed by the city exceed these amounts, we hold that they are illegal and reduce them accordingly.

▋ B. *Did assessments exceed value of special benefits?* Section 384.61 provides that an assessment against property for a public improvement may not exceed the value of the special benefits conferred on the property by reason of the improvement. While the city council's determination that property will be specially benefited by an improvement is conclusive, a prop-

erty owner may overcome the presumption that the amount of the assessment does not exceed the value of the special benefit and show the assessment is excessive. *See Goodell*, 193 N.W.2d at 93. The issue is whether the Uhlenhakes have overcome the presumption and proved that the assessments against the individual parcels were greater than the benefits.

 At trial, Uhlenhakes offered evidence by their appraiser and by Alma Uhlenhake as to the benefits conferred by the improvement. In our de novo review we are not convinced by this testimony in regards to parcels 1A, 1B and 1C. The appraiser's testimony involved application of a formula to the amount of the assessment imposed.[1] We do not find this testimony persuasive for two reasons. First, the formula used would always result in a finding that an assessment is excessive. Second, the testimony did not involve any actual consideration of the land in question. In addition, Alma Uhlenhake's testimony as to value of the benefits conferred involved mere statements of opinion unsupported by reason. Uhlenhakes have not met their burden of proof as to parcels 1A, 1B and 1C. We do, however, find that the assessment against 1D exceeded the benefits conferred by the improvement.

Alma Uhlenhake testified that no benefit was conferred on 1D and the appraiser testified the benefit was $72.25. Their evidence concerning this parcel was more persuasive as the appraiser did not blindly apply his formula and took access to the parcel into consideration. Also, Alma Uhlenhake's opinion was supported by sound reasoning. The evidence clearly shows that all but the south six feet of this parcel lies behind other residences owned by other people, which block access to Hall Street. Thus, access to Hall Street requires travel over parcel 1C. We are convinced by the evidence that this near land-locked parcel received little benefit from the street improvement. We find that parcel 1D had its value increased by the improvement in the sum of $75.00. Consequently, the assessment against 1D exceeded the benefits conferred by the amount of $647.53.

IV. *Disposition.* We affirm the trial court on its determination that Uhlenhakes are not entitled to an agricultural deferment on parcel 1C and hold that the assessment on that parcel in the amount of $1581.12 should stand.

We hold that the assessments against parcels 1A and 1B exceeded 25% of their fair market value. The assessment against 1A should be reduced by $1095.82 to the proper amount of $2083.33. The assessment against 1B should be reduced by $661.53 to the proper amount of $1319.44. These amounts represent 25% of the fair market value of the parcels. We further hold that the assessment against parcel 1D exceeds 25% of fair market value and also exceeds the amount of the benefit conferred by the special improvement. The assessment against 1D may not exceed the lesser of these two amounts, which in this case is $75.00, the amount of benefit received. We reduce the assessment against 1D by the sum of $647.53 to the proper amount of $75.00. We assess the city for 75% of the cost of this appeal and assess the remaining 25% against Uhlenhakes.

We remand this matter to the trial court for the entry of a decree in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

1. The appraiser testified that he believed that when property is subject to a special assessment, the market value increases in an amount equal to 10% to 20% of the amount assessed. This opinion was based on conversations with two assessors concerning their treatment of improvements and his own past experience and observations.