DES MOINES CHRYSLER–PLYM-
OUTH, INC., and Charles H.
Gabus, Appellees,

v.

CITY OF URBANDALE,
Iowa, Appellant.

No. 91–1023.

Court of Appeals of Iowa.

April 28, 1992.

J. Barton Goplerud of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellees.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

FACTS

Appellees, Des Moines Chrysler–Plymouth and Charles H. Gabus, (Gabus proper-

ty) own property within an Urbandale special assessment district for the paving of streets.[1] Appellees use the property for commercial purposes, specifically a car dealership that sells new and used cars and provides service for cars. The Gabus property abuts both 59th Street (for 202 feet) and Townsend Avenue (for 410 feet) and is the only property that abuts Townsend Avenue on the south. Appellees' tracts do not have a driveway to the improved streets.

The total project cost $261,727.98 of which the city paid $90,133.49. The remaining project cost was assessed against properties within the assessment district. Pursuant to a standard formula, the city of Urbandale spread the cost among the land owners within the district. The city assessed the Des Moines Chrysler–Plymouth tract at $2787.00 and the Charles H. Gabus tract at $14,694.00, as their respective portions of the cost of the street paving.[2] The total value of the Gabus property was established at $987,200 and comprises twenty-three percent of the area of the entire assessment district.

The appellees subsequently filed a petition challenging the assessment. The case proceeded to a trial before the court. Evidence was presented that the streets prior to the project were unimproved gravel streets, resulting in complaints that gravel, oil, dirt, and mud impaired the management and maintenance of the property in question and that this condition was eliminated by the project. Gene Gabus testified that the project minimally benefited the property as a result of improved appearance, but that the paving was not a benefit to the business and did not increase property values.

The appellees' appraiser, who did not conduct a formal appraisal of the appellees' property, testified that any benefits to appellees' property as a result of the project would be nominal. This opinion was grounded on the assumption that the appellees did not have direct vehicular access to the improved streets. The appraiser also stated that, in his opinion, the highest and best use of the property would continue to be its use as an automobile dealership.

The city called its Director of Community Development and its Director of Public Works/City Engineer. These witnesses testified the appellees' property benefited from the project by improved drainage, dust control, improved parking, improved aesthetics, improved business conditions, improved access, improved safety, and improved potential use of the property. The Director of Community Development indicated the street improvement enhanced the opportunity to put the land to noncommercial uses and enhanced its commercial potential.

The City Engineer testified he was responsible for devising the assessment formula the city used to spread the assessments and set the boundaries of the assessment district.[3] The appellees did not offer any evidence regarding an alternative assessment formula that would fairly allocate the assessments within the district.

The district court entered its findings of fact and conclusions of law and ruling reducing the assessment against the appellees' real estate. The court found the project provided only nominal and minimal benefits to the appellees by the reduction of dirt, dust, and grime and by the resulting landscaping. The court reached this conclusion on the basis that the appellees' properties lacked access to the paving project. The court reduced the assessment against the Des Moines Chrysler–Plymouth property to $557.40 and reduced the assessment against the Charles H. Gabus property to $2938.80.

1. Although separately owned, the tracts are operated as a unit as a new and used automobile dealership and the owners brought this action jointly.

2. The Gabus property was not assessed for any of the costs of the installation of sidewalks, storm sewers, driveway approaches, or for any of the costs with regard to earthwork.

3. From the record, it appears the Gabus property comprises approximately twenty-three percent of the entire assessment district. The final assessment as originally fixed by the City was 6.68 percent of the total project cost and is 10.1 percent of the total assessed cost. The trial court reduced Gabus' share to 2.2 percent of the assessable cost.

On June 28, 1991, the City of Urbandale filed a notice of appeal.

## ANALYSIS

■ The property owner bears the burden of proving that a special assessment is excessive by evidence which includes proof of the actual benefit to his property. (*Goodell v. City of Clinton*, 193 N.W.2d 91, 93 (Iowa 1971)) (cited with approval in *Uhlenhake v. City of Ossian*, 418 N.W.2d 642, 647 (Iowa 1988)). In the absence of such evidence, the assessment must stand. *Id.*

■ On appeal, we examine the evidence de novo to determine if the property owner has met this burden, although weight may be given to the trial court's findings. *Uhlenhake*, 418 N.W.2d at 647 (citing *Goodell*, 193 N.W.2d at 95). There is a presumption that some benefit results to the assessed property owners. *Goodell*, 193 N.W.2d at 93. The city council's determinations of value and amount of assessment are presumed correct. *Id.* Where the property owner is able to meet its burden of proof, this court may reduce the assessment imposed to a proper amount. *Id.* (citing *Knudsen v. City of Des Moines*, 254 N.W.2d 1, 5 (Iowa 1977)).

Assessment cases cannot be determined with mathematical certainty. The evidence is necessarily based on opinion, some of it made more conjectural because it attempts to project present conditions into the future. These opinions must be taken with those reservations arising from the nature of the case, the self-interest of the witnesses, and the uncertain basis upon which they rest. (citation omitted) We have, on the one hand, city officials attempting to justify a decision long since made and, on the other, property owners seeking to minimize the taxes they must pay for an improvement they did not want. Recognizing this problem, we have said, "It is exceedingly difficult to arrive at an assessment in such a case that shall be accurate and just. Approximation is all that can be expected."

*Goodell*, 193 N.W.2d at 95 (quoting *Tjaden v. Town of Wellsburg*, 197 Iowa 1292, 1296, 198 N.W. 772, 773–74 (1924)).

The Iowa Code places express limits upon a city's power to specially assess property. Iowa Code section 384.61 provides in pertinent part:

**The total cost of a public improvement,** except for paving that portion of a street lying between railroad tracks and one foot outside of the tracks, or which is to be otherwise paid, **must be assessed against all lots within the assessment district in accordance with the special benefits conferred upon the property, and not in excess of such benefits.**

Iowa Code § 384.61 (1991) (emphasis added). Additional limits are found in Iowa Code section 384.62 which provides in pertinent part:

**A special assessment ... may not exceed twenty-five percent of the value of the lot** as shown by the plat and schedule approved by the council or as reduced by the court.

Iowa Code § 384.62 (1991) (emphasis added). The central issue is whether the assessment exceeded the value of the special benefits. As stated previously, the property owner bears the burden of proving a special assessment is excessive because the city council's determinations of value and amount of assessment are presumed correct. *Goodell*, 193 N.W.2d at 93.

In *City of Clive v. Iowa Concrete Block & Material Co.*, 298 N.W.2d 585, 592 (Iowa 1980), the Iowa Supreme Court recognized that no actual dollar amount of benefit is necessary to prove an assessment is excessive.

While property owners often introduce evidence of a specific dollar amount of benefit to prove that the assessment is excessive, (citations omitted), our cases have not decided that this is the only way to prove an assessment is excessive.

*Id.* (citing *Wharton v. City of Oskaloosa*, 158 N.W.2d 834, 836 (Iowa 1968)).

■ We conclude that each property owner affected failed to meet its burden. It was incumbent upon that property owner to show the special benefit conferred is not

equal to that found by the City Council. The burden remained with that property owner to overcome the presumption of the correctness of the assessment as fixed by the Council.

The only expert witness appellees called at trial was a real estate appraiser, William Carlson. Mr. Carlson admitted he knew nothing about the formula the city used in its assessments. Mr. Carlson further admitted he did not perform an appraisal of appellees' property. He also did not have an opinion as to what a fair allocation of the assessment ought to be, or what appellees should pay. Appellees' other witness at trial was Gene Gabus, General Manager/Vice President of Des Moines Chrysler–Plymouth. Mr. Gabus testified he does not anticipate any benefit to his business from the paving project, and if there is any benefit it is very minimal. Yet, Mr. Gabus then conceded he was "not a real good expert" at assessing the degree of benefits.

There is discussion and argument concerning benefits derived based on current conditions. It is clear the law contemplates consideration of future uses of the property as well as its current use. As our Supreme Court stated in *C.R.I. & P. v. City*, 172 Iowa 444, 449, 153 N.W. 106 (1915):

It is natural for the average property owner to resent the burden thus laid upon him, and he easily persuades himself that the thing for which he is asked to pay is a detriment, rather than a benefit, to his land; and ordinarily it is not difficult for him to find plenty of sympathizing neighbors who will unite in supporting his contention. Indeed, the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future. They are none the less benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement. To this general effect is our holding in *Bell v. Burlington*, 154 Iowa [607] 614 [134 N.W. 1082 (1912)]; *Camp v.*

*Davenport*, 151 Iowa 33 [130 N.W. 137 (1911)], and cases there cited. The same question of benefits to a railroad right of way from a street improvement was considered by the Supreme Court of the United States, in *Louisville & N.R. Co. v. Barber*, 197 U.S. 430, 433 [25 S.Ct. 466, 467, 49 L.Ed. 819 (1905)], where Mr. Justice Holmes, speaking for the court says:

"The foundation of this familiar form of taxation is a question of theory. The amount of benefit which an improvement will confer upon particular land—indeed whether it is a benefit at all—is a matter of forecast and estimate. In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law."

In addition, a benefit necessarily requires that a fair allocation of costs of an improvement within an assessment area be made to all property. *Rood v. City of Ames*, 244 Iowa 1138, 60 N.W.2d 227 (1953); *Goodell v. City of Clinton*, 193 N.W.2d 91 (Iowa 1971). In making this determination, it is necessary to consider whether proper factors are considered in the formula and whether the formula reflects the actual benefit to the property. *Beh v. City of West Des Moines*, 257 Iowa 211, 131 N.W.2d 488 (1964). Our Supreme Court has noted that:

"The statute involved here does not specify any particular method or measure to be used in determining the assessments. The council may use its own judgment to a reasonable extent.... But any method must be so used as to effect the ascertainment of assessments that are just and equitable.... (citations omitted). The area or frontage methods cannot be made the sole or conclusive basis of determining the assessments without regard to all other factors...."

*Wharton v. City of Oskaloosa*, 158 N.W.2d at 835 (quoting *Rood*, 244 Iowa at 1160, 60 N.W.2d at 241).

The appellees do not challenge the correctness of the formula used by the City Council. They merely question whether all factors were considered in determining Ga-

bus' assessment. We conclude that when the assessments were imposed that all factors, and all peculiarities of the Gabus property were considered. From our de novo review, this included the benefits to the property and the fact that it does not have a driveway access to the newly paved streets. We are convinced the assessment was not predicated solely on area or frontage.

We find the appellees failed to meet their burden of proving the special assessment is excessive. Therefore, the assessment the city council determined must stand.

## CONCLUSION

The appellees failed to show the assessment is excessive. We hold, therefore, the assessments levied by the city council must prevail. After considering all issues presented, we reverse the trial court's order reducing the amount of appellees' assessments, and we remand with instructions not inconsistent with this opinion. The property belonging to Des Moines Chrysler–Plymouth is assessed at $2787.00. The property belonging to Charles H. Gabus is assessed at $14,694.00.

The costs of this appeal are taxed to the appellees.

REVERSED AND REMANDED.