# IN THE SUPREME COURT OF IOWA

No. 41 / 06–1822

Filed May 9, 2008

**HORAK PRAIRIE FARM, L.P.**,

    Appellant,

vs.

**CITY OF CEDAR RAPIDS**,

    Appellee.

- - - - - - - - - - - - - - - - - - - - - -

**LEONARD DOLEZAL,**

    Appellant,

vs.

**CITY OF CEDAR RAPIDS,**

    Appellee.

---

Appeal from the Iowa District Court for Linn County, Robert E. Sosalla, Judge.

Plaintiffs challenge the special assessments levied on their properties for public improvements and the City's use of RISE program funds. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Dennis J. Mitchell of Meardon, Sueppel & Downer P.L.C., Iowa City, for appellants.

William J. Wright, Cedar Rapids, for appellee.

**LARSON, Justice.**

The plaintiffs appeal the district court's ruling affirming special assessments levied against their properties for improvements made to an abutting roadway, arguing (1) the City of Cedar Rapids improperly applied Revitalize Iowa's Sound Economy (RISE) grant funds only to the public's portion of the improvement costs, and (2) the special assessments were excessive. We affirm in part, reverse in part, and remand.

## I. Facts and Prior Proceedings.

On December 31, 2003, the City of Cedar Rapids adopted an improvement project described as the "76th Avenue SW from 6th Street to CRANDIC Railroad East of 18th Street, Pavement Improvements" (the project). The project involved paving 76th Avenue SW from 6th Street west to the CRANDIC Railroad, installing storm sewers, installing traffic signals at the intersection of 76th Avenue SW and 6th Street, and adding turn lanes at that intersection for east and westbound traffic on 76th Avenue SW. Eleven properties, including parcels owned by Horak Prairie Farm, L.P. and Leonard Dolezal (the plaintiffs), abutted 76th Avenue SW to the north and south. The plaintiffs were specially assessed for the improvements east of 6th Street and for the installation of the traffic signals. The City applied for, and was issued, a RISE grant in connection with the project and used that money to fund the public's portion of the project costs.

The plaintiffs appealed the special assessments, arguing the City improperly applied the RISE funds only to the public's share of the project costs rather than applying it to the total cost of the project. Additionally, the plaintiffs complained that the amount of the assessment

exceeded the special benefit conferred on their properties. The district court entered judgment for the City, and the plaintiffs appealed.

## II. Standard of Review.

The district court's ruling on the RISE issue was based on an interpretation of Iowa Code chapter 315 (2005). Accordingly, we review the district court's ruling on this issue for correction of errors at law. *State ex rel. Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107, 109 (Iowa 2007).

We review the district court's ruling on the plaintiffs' challenge to the special assessments de novo. *Uhlenhake v. City of Ossian*, 418 N.W.2d 642, 647 (Iowa 1988). We give weight to the district court's findings, but are not bound by them. *Id.*

## III. The RISE Issue.

The RISE program, established in Iowa Code chapter 315 and administered by the Department of Transportation, was created to promote economic development in Iowa through "the establishment, construction, improvement and maintenance of roads and streets." Iowa Code § 315.3(1). The program is funded by a portion of the motor fuel and special fuel excise taxes. Iowa Code § 315.2(1). Qualifying projects can be funded in whole or in part by RISE money. Iowa Code §§ 315.5, 315.6. In order to fully pay for any particular project, RISE funds can be combined with money from other sources such as a primary road fund, the sale of general obligation bonds, other city or county revenues, or money from participating private parties. Iowa Code § 315.6(1). The issue presented in this case is whether RISE funds granted for a particular project can be used solely to pay for the public's portion of the project costs or whether such funds must also be allocated to cover a

portion of the costs incurred by private landowners by way of a special assessment. This is an issue of first impression.

The general purpose of the RISE program is to fund construction and improvement of public roadways. Iowa Admin. Code r. 761—163.4(*b*). Nothing in Iowa Code chapter 315 or our administrative code requires that RISE funds be applied to the entire costs of a project, including those costs allocated to private landowners as special assessments. In fact, the administrative code specifically prohibits use of RISE funds for "private road projects or for any other private purpose." Iowa Admin. Code r. 761—163.4(*b*). Applying RISE monies only to that portion of a project benefiting the public is consistent with the general purpose of the RISE program. Requiring that a portion of the costs allocated to private landowners as a result of the special benefit received by those landowners be paid by RISE funds is inconsistent with the purpose of the RISE program and administrative rule 761—163.4(*b*).

Moreover, applying RISE funds only to that portion of a project benefiting the public is consistent with the purpose of the special-assessment process at issue in this case. "Special assessments are a tool given to cities to assist them in financing public improvements." *City of Davenport v. Shewry Corp.*, 674 N.W.2d 79, 84 n.1 (Iowa 2004). Special assessments require private landowners to reimburse the city for the cost of public improvements that specially benefit the landowners. *Id.*; *Uhlenhake*, 418 N.W.2d at 646. Requiring that RISE funds, created specifically to fund *public* improvements, be applied toward those costs specially assessed to private landowners would be inconsistent with the underlying goal behind special assessments—to ensure that private landowners pay their fair share of improvements specially benefiting their properties.

The plaintiffs argue that applying RISE money only to the public's portion of improvement costs allows the City to profit by permitting the City to avoid paying its share of the costs. We do not agree. This is not a situation in which the City received RISE money in excess of the City's payment obligations under the project. *See, e.g., Kragnes v. City of Des Moines*, 714 N.W.2d 632, 640–41 (Iowa 2006) (discussing the difference between a permissible fee and an impermissible tax: " 'If [a fee] is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation.' ") (quoting *City of Hawarden v. US West Comm'ns, Inc.*, 590 N.W.2d 504, 509 (Iowa 1999)). There is no evidence in the record suggesting that the City retained a portion of the RISE funds granted for this particular project and applied those funds to other uses. All evidence in the record shows the RISE funds received by the City were properly used to pay the costs of this particular project. We affirm the district court's ruling on this issue.

**IV.  The Special Assessment Issue.**

The plaintiffs also complain that the project costs specially assessed to their properties were excessive.

Iowa Code section 384.38 permits a city to assess private properties for the cost of public improvements. *See Shewry Corp.*, 674 N.W.2d at 84 n.1. However, the costs assessed to a property must not exceed the special benefit conferred upon the property by the improvements, nor can the assessment exceed twenty-five percent of the value of the property. Iowa Code §§ 384.61, 384.62(1). These limitations ensure that individual property owners are not subsidizing the general benefits enjoyed by the public resulting from the improvements,

particularly when street improvements are at issue. *See generally Goodell v. City of Clinton*, 193 N.W.2d 91, 94 (Iowa 1971); *Milton O. & Phyllis A. Thorson Revocable Estate Trust v. City of West Des Moines*, 531 N.W.2d 647, 650 (Iowa Ct. App. 1995) ("[S]treet paving projects usually confer both general and special benefits, and the abutting property owners are not required to pay for the general benefits accruing to the community at large.").

We have established a number of presumptions to guide our review of a city's special assessment for public improvements. "[T]he city council's determination that property will be specially benefited by an improvement is conclusive." *Uhlenhake*, 418 N.W.2d at 648–49; *see also Goodell*, 193 N.W.2d at 93. A property owner cannot generally argue that he has not received any benefit from a public improvement; rather, a property owner must show that the benefit received was not as great as that determined by the city. *Knudsen v. City of Des Moines*, 254 N.W.2d 1, 3 (Iowa 1977); *Gingles v. City of Onawa*, 241 Iowa 492, 494–95, 41 N.W.2d 717, 718 (1950) (" 'Speaking generally, there is a fair presumption that all real estate receives some degree of benefit from the permanent improvement of a street upon which it abuts. It is upon such presumption that the whole system of special assessments for local improvements is justified and sustained.' ") (quoting *Chicago, R.I. & P. Ry. v. City of Centerville*, 172 Iowa 444, 447, 153 N.W. 106, 107, 154 N.W. 596 (1915)). We presume that the amount of the city's assessment is correct and does not exceed the special benefit conferred on the property by the improvement. *Uhlenhake*, 418 N.W.2d at 647. "The burden is on the protesting property owner to show his assessment is excessive by evidence which includes proof of the actual benefit to his property. In the absence of such evidence, the assessment must stand."

*Goodell*, 193 N.W.2d at 93. If the property owner carries his burden, the court may reduce the amount of the assessment. *Uhlenhake*, 418 N.W.2d at 647. Unfortunately, mathematical and analytical certainty is usually impossible in these cases, and thus, we must rely on approximations to determine the correct amount of the assessment. *See Knudsen*, 254 N.W.2d at 4; *Spring Valley Apartments, Inc. v. City of Cedar Falls*, 225 N.W.2d 129, 131 (Iowa 1975); *Goodell*, 193 N.W.2d at 95. The ultimate question is whether the assessment "represents a fair proportional part of the total cost." *Rood v. City of Ames*, 244 Iowa 1138, 1158, 60 N.W.2d 227, 238 (1953).

In the present case, the plaintiffs' properties were each assessed $49,270 for the following improvements made to the abutting roadway and intersection: installation of traffic signals, installation of turn lanes, grading and drainage work incidental to installation of the traffic signals and turn lanes, and assessment and consulting fees. Both properties are currently zoned for agricultural use, but the highest and best use of both properties is for future development for commercial or industrial use.

The plaintiffs' properties clearly received a special benefit from the improvements. The future use of the properties for commercial or industrial use necessitated the traffic control provided by the traffic signals and turn lanes. It is well-settled Iowa law that a property can be assessed for improvements based on the benefit to the future use of the property. *Spring Valley Apartments, Inc.*, 225 N.W.2d at 131–32; *Mulford v. City of Iowa Falls*, 221 N.W.2d 261, 266 (Iowa 1974) ("The consideration of future uses, reasonably to be anticipated, may be considered in determining the benefit to property to be assessed."); *Goodell*, 193 N.W.2d at 93 ("In considering the benefits flowing from a special improvement, it is proper to consider future uses and

expectations as well as present use to which the property is put.").  As we have said,

> "the benefits to be derived in such cases are ordinarily not instant upon the inception or completion of the improvement, but materialize with the developments of the future.  They are nonetheless benefits because their full fruition is postponed, or because the present use to which the property is devoted is not of a character to be materially affected by the improvement."

*Beh v. City of West Des Moines*, 257 Iowa 211, 222, 131 N.W.2d 488, 495 (1964) (quoting *Chicago, R.I. & P. Ry.*, 172 Iowa at 449, 153 N.W. at 108). Additionally, any ingress and egress from these properties in the future will be enhanced by the gaps in traffic created by the improvements.  We recognize, as we have in the past, the plaintiffs' properties, as agricultural properties, "[do] not receive the same immediate benefit from public improvements as does other land."  *Uhlenhake*, 418 N.W.2d at 647.  It is for this reason our legislature enacted Iowa Code section 384.62.  Section 384.62(4)(*d*) allows landowners, such as the plaintiffs, to defer payment of a special assessment until such time as the property is no longer classified as agricultural land.

Determining that a property specially benefits from a public improvement is a relatively simple exercise when compared to determining the value of that special benefit for assessment purposes. *See Spring Valley*, 225 N.W.2d at 131 ("[T]he task of determining what assessment for special improvement is proper is 'difficult, complicated and technical,' one which has no precise mathematical answer.") (quoting *Mulford*, 221 N.W.2d at 268).  Calculating the amount of special benefit received by a property is an inexact science.  The City set forth a detailed description of its assessment procedures.  The City determined that the public benefit of the traffic signals was fifty percent and, as a result,

assessed each of the four abutting landowners, including the plaintiffs, twelve and one-half percent of the cost of installing the traffic signals. Additionally, each of the plaintiffs was assessed twenty-five percent of the cost of installing the turn lanes abutting their property. These assessments, as well as the assessments for assessment fees and consulting fees, are reasonable. " '[T]he final and decisive inquiry is whether the assessment when made is just and equitable and bears some reasonable proportion to the benefits which the property derives from the improvements for which payment is to be made.' " *Knudsen*, 254 N.W.2d at 4 (quoting *Early v. City of Ft. Dodge*, 136 Iowa 187, 189–91, 113 N.W. 766, 767 (1907)). We think, in this case, the City's special assessments on the plaintiffs' properties met this standard. The plaintiffs have failed to carry their burden to show the assessments are excessive. We affirm the district court's ruling on this issue.

Interestingly, the City assessed the plaintiffs' properties for 100% of the cost of the grading and drainage work that was incidental to installation of the turn lanes and traffic signals. The public benefit of the traffic signals and turn lanes was fifty percent. Because installation of the turn lanes and traffic signals necessitated the grading and drainage work, the public benefit of the grading and drainage work should also be fifty percent. The plaintiffs carried their burden to show the special assessment for the grading and drainage work exceeded the special benefits conferred on the plaintiffs' properties. We reverse the district court's ruling on this narrow issue and remand for the limited purpose of reducing the special assessments for the grading and drainage work on the plaintiffs' properties by fifty percent.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**