# IN THE COURT OF APPEALS OF IOWA

No. 17-0082
Filed April 18, 2018

**INTERCHANGE PARTNERS, L.L.C.,**
    Plaintiff-Appellee,

**vs.**

**CITY OF WEST DES MOINES, IOWA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Paul R. Huscher, Judge.


The City of West Des Moines appeals the district court's ruling invalidating the ordinances imposing a connection fee levied by the City. **AFFIRMED.**



Ivan T. Webber, James R. Wainwright, and Maria E. Brownell of Ahlers & Cooney, P.C., Des Moines, for appellant.

George A. LaMarca and Ryan C. Nixon of LaMarca Law Group, P.C., Des Moines, for appellee.

Charles F. Becker and Espnola F. Cartmill of Belin McCormick, P.C., Des Moines, for amicus curiae, Home Builders Association of Greater Des Moines.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

At the heart of this litigation is whether a city can finance the construction of roadway culverts by establishing a district under Iowa Code section 384.38(3)(a) (2015), then collect fees from certain properties within the district. The City of West Des Moines (the City), enacted ordinances to allow for this form of financing. Interchange Partners, L.L.C. (Interchange) brought suit to contest the City's action. The district court ruled in Interchange's favor, concluding (1) the property does not have the required connection to a city utility, (2) the placement of culverts under the City's streets does not constitute a city sewer, and (3) the connection fee is not equitably apportioned among all persons in the district benefiting from the culverts.

The City appeals the district court's decision. As an initial matter, the City claims the district court, and this court on appeal, lack subject matter jurisdiction because certiorari is the exclusive means to challenge the City's ordinance and Interchange's failure to petition for a writ of certiorari within thirty days of the enactment of Ordinance No. 2117 is fatal. The City also claims the district court erred in finding Ordinance Nos. 2024 and 2117 were illegal because the City validly created a city sewer utility, properties within the district have the proper connection to this utility, and the calculation and apportionment of the fee is equitable.[1] Concluding we do have jurisdiction to hear the appeal and the district court did not err in interpreting Iowa Code section 384.38(3)(a), we affirm the district court's ruling.

---

[1] The amicus brief filed by The Home Builders Association of Greater Des Moines in this appeal generally supports the position of Interchange.

## I. Background Facts and Proceedings

On October 14, 2013, the City approved and passed Ordinance No. 2006 "to establish the method and requirements for the establishment of individual stormwater connection fee districts to fund the design and construction of certain stormwater drainage facilities on major streets." The stated intent of the ordinance includes "to set forth the method of recovery of proportional cost shares from those property owners who develop property within the" district.

Pursuant to Iowa Code section 384.38(3)(a), and after notice and public hearing regarding Ordinance No. 2024, the City established the Sugar Creek Stormwater Connection Fee District on April 11, 2014. The ordinance requires payment of the connection fee pursuant to the following:

1. For property being platted the fee is due and payable before approval of the final plat.
2. For property subject to a site plan the fee is due and payable before approval of the site plan.
3. For all other property the fee is due and payable before issuance of a building permit.

No fees were assessed to properties already developed or land considered to be undevelopable. Possibly due to only a portion of its property being located within the district, Interchange was not provided notice of Ordinance No. 2024. On October 5, 2015, the City enacted Ordinance No. 2117, which properly notified Interchange and confirmed its property is included in the district and, thus, subject to the connection fee.

The City intended to use connection fees from the district to fund the construction of seventeen structures—mostly roadway culverts—along natural drainage channels. The City acknowledged the new structures will not increase or

decrease the runoff capacity from Interchange's properties, and the new structures will not improve the storm water flow capacity of the existing creek network.

On October 23, 2015, Interchange challenged the enactment of Ordinance No. 2117 "by and through Ordinance No. 2024" by filing a petition with the district court pursuant to Iowa Code section 384.66(1) asserting its "connection fee district" was wholly illegal, null, and void under Iowa Code section 384.38(3)(a).[2] Specifically, Interchange asserted the improvements, to be financed by the fees, are not city sewer or water utilities, Ordinance No. 2117 does not service its property because there is no utility to which its property could physically connect, and the assessment of the fees is inequitable across the newly created district.

The case proceeded to a bench trial before the district court where the court ruled in favor of Interchange. The district court held the City's Ordinances Nos. 2024 and 2117 are not compliant with the Iowa Code because the property does not have the required connection to a city utility, the placement of culverts under the City's streets does not constitute a city sewer, and there is no equitable apportionment of the costs as each person benefited by the culverts in the district is not required to pay the connection fee.

The City appeals.

## II. Standard of Review

Review of rulings on subject matter jurisdiction is for correction of errors at law. *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006). The district court's ruling on the connection fee issue was based on an interpretation of Iowa Code chapter

---

[2] The petition was later amended on June 6, 2016.

384. Accordingly, we review the district court's ruling for correction of errors at law. *State ex rel. Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107, 109 (Iowa 2007). Our review of the equity of property assessments is de novo. *Nelson v. City of Hampton*, 802 N.W.2d 224, 230 (Iowa 2011). We give weight to the findings by the district court but are not bound by them. *Id.*

### III. Subject Matter Jurisdiction

The City asserts this court lacks subject matter jurisdiction over the case because the Iowa Code does not provide a specific means for appealing connection fees. It claims Interchange's exclusive remedy is to seek a writ of certiorari to test the legality of the City's quasi-judicial proceeding in enacting or adopting Ordinance No. 2117. *See* Iowa R. Civ. P. 1.1402; *Sergeant Bluff-Luton Sch. Dist. V. City Council of Sioux City*, 605 N.W.2d 294, 297 (Iowa 2000). Subject matter jurisdiction can be raised at any time. *See Klinge*, 725 N.W.2d at 16. Therefore, because Interchange did not follow its only available course of action through seeking a writ of certiorari, the City argues this case must be dismissed.

Iowa Code section 384.66 provides a test of regularity for persons holding an interest in property subject to a special assessment. Iowa Code § 384.66. "Special assessment" is not defined in chapter 384. Generally, a special assessment requires "private landowners to reimburse the city for the cost of public improvements that specially benefit the landowners." *Horak Prairie Farm, L.P. v City of Cedar Rapids*, 748 N.W.2d 504, 507 (Iowa 2008) (citations omitted). As discussed below, section 384.38(3)(a) allows cities to impose "fees" on affected landowners "for the connection of property to the city sewer or water utility." Iowa

Code § 384.38(3)(a). Charging for the benefit of connecting to a utility is generally consistent with a special assessment.

Iowa Code sections 384.38 and 384.66 are both located in chapter 384, division IV. This division IV is titled "Special Assessments," and section 384.38 is titled "Certain costs assessed to private property." When Iowa enacted 384.38(3), the legislature explained the "bill authorizes a city . . . to establish one or more special assessment districts within the city and adopt schedules of fees to cover the cost of connecting a city sewer or water utility to properties serviced by the utility." H.F. 2343, 75th G.A., 2d Sess. explanation (1994). An explanation attached to a bill suggests the legislative intent. *Iowa Ins. Institute v. Core Group of Iowa Ass'n for Justice*, 867 N.W.2d 58, 76 (Iowa 2015) (citations omitted). By placing section 384.38(3) in the Special Assessments division, and by explaining section 384.38(3) allows the establishment of special assessment districts, the legislature showed it intended for "fees" under section 384.38(3) to be "special assessments" subject to review under 384.66.

The City notes other special assessments in chapter 384, division IV, use different procedures. Unlike section 384.38(3), other special assessments may involve a preliminary and final assessment plat and schedule, lot valuations, a resolution of necessity, certification to the county treasurer, agricultural deferments, and payment to the country treasurer. Iowa Code §§ 384.42–.65. However, the City does not explain why any of these differences require separating section 384.38(3) from other special assessments under chapter 384, division IV, for purposes of review under section 384.66.

The City enacted ordinance No. 2006 on October 14, 2013, setting up the district. On October 5, 2015, the City enacted Ordinance No. 2117 notifying Interchange that its property is located within the district. On October 23, 2015, Interchange filed its petition. Despite filing the petition with the incorrect caption, Interchange clearly challenged the validity of the ordinance.[3] Because Interchange filed its petition within thirty days of the City's enactment of the new ordinance, and because this petition protesting a special assessment is authorized under Iowa Code section 384.66, the district court had subject matter jurisdiction to hear the case, as do we on appeal.

### IV. City Ordinances

The City asserts the district court erred in its interpretation of section 384.38(3)(a). The district court found (1) Interchange's property is not "connected" to a city utility just because its natural water drainage eventually flows into the newly constructed culverts; (2) even if a connection exists, the culverts are not a "city sewer utility"; and (3) even if the culverts were a city sewer utility, the fees charged are not equitably assessed across the district.

Our analysis begins with the general framework of chapter 384, which governs city finances. *Grove v. City of Des Moines*, 280 N.W.2d 378, 379 (Iowa 1979). Section 384.38 permits a city to assess private properties for the cost of

---

[3] A district court serves in an appellate capacity when reviewing the actions of an inferior tribunal in certiorari proceedings. *See Sueppel v. Eads*, 156 N.W.2d 115, 116 (Iowa 1968). The misstep of filing an appeal, rather than petitioning for writ of certiorari, is ordinarily not fatal to our review. *See Shannon v. Hansen*, 469 N.W.2d 412, 414 (Iowa 1991); *see also State v. Bartley*, 797 N.W.2d 608, 610 (Iowa Ct. App. 2011). We proceed as if a petition for writ of certiorari were filed. Iowa R. App. P. 6.108; *Hearity v. Iowa Dist. Ct.*, 440 N.W.2d 860, 862 (Iowa 1989).

public improvements.  Iowa Code § 384.38; *Horak Prairie Farm, L.P.*, 748 N.W.2d at 507.

> 1. A city may assess to private property within the city the cost of construction and repair of public improvements within the city, and main sewers, sewage pumping stations, disposal and treatment plants, waterworks, water mains, extensions, and drainage conduits extending outside the city.
> . . .
> 3.  a. A city may establish, by ordinance or by resolution adopted as an ordinance after twenty days' notice published in accordance with section 362.3, and a public hearing, one or more districts and schedules of fees for the connection of property to the city sewer or water utility.  If the governing body directs that notice be made by mail, the notice shall be as required in section 384.50.  Each person whose property will be served by connecting to the city sewer or water utility shall pay a connection fee to the city.  The ordinance shall be certified by the city and recorded in the office of the county recorder of the county in which a district is located.  The connection fees are due and payable when a utility connection application is filed with the city.  A connection fee may include the equitable cost of extending the utility to the properties, including reasonable interest from the date of construction to the date of payment.  All fees collected under this subsection shall be paid to the city treasurer.  The moneys collected as fees shall only be used for the purposes of operating the utility, or to pay debt service on obligations issued to finance improvements or extensions to the utility.

Iowa Code § 384.38.  "An ordinance is presumed to be reasonable and valid, and the burden is upon one who attacks it to show it is not."  *Inc. Town of Carter Lake v. Anderson Excavating & Wrecking Co.*, 241 N.W.2d 896, 901 (Iowa 1976) (citations omitted).

## A.  City Sewer Utility

The City first argues its planned system of culverts create a city sewer utility under section 384.38(3)(a).  As the district court noted, the planned culverts simply "permit the continued natural flow of storm water drainage through covered passageways, [which] does not constitute a city sewer utility."  We agree that

roadway culverts do not constitute a sewer system or utility that provide a special benefit associated with a connection fee.

Under section 384.38(1), a city may issue assessments for "the cost of construction and repair of public improvements within the city, and main sewers, sewage pumping stations, disposal and treatment plants, waterworks, water mains, extensions, and drainage conduits extending outside the city." Iowa Code § 384.38(1); *see also Home Builders Ass'n of Greater Des Moines v. City of W. Des Moines*, 644 N.W.2d 339, 346 n.2 (Iowa 2002). Section 384.37 provides definitions for a public improvement, district, sewer, and sewer system:

> 4. "District" means the lots or parts of lots within boundaries established by the council for the purpose of the assessment of the cost of a public improvement.
> . . . .
> 19. "Public improvement" includes the principal structures, works, component parts and accessories of any of the following:
> a. Sanitary, storm and combined sewers.
> b. Drainage conduits, channels and levees
> . . . .
> e. Sewage pumping stations, and disposal and treatment plants.
> f. Underground gas, water, heating, sewer and electrical connections located in streets for private property.
> . . . .
> 22. "Sewer" means structures designed, constructed and used for the purpose of controlling or carrying off streams, surface waters, waste or sanitary sewage.
> 23. "Sewer systems" are composed of the main sewers, sewage pumping stations, treatment and disposal plants, lateral sewers, drainage conduits or channels and sewer connections in public streets for private property.

These statutes allow a city to assess private property owners for the costs of a variety of public improvements within the city.[4] *See* Iowa Code § 384.38(1).

---

[4] Interchange asserts the intent behind the connection fee in this case was to pave roads for future development in West Des Moines. Under chapter 384, the City can assess, via

However, a city may only charge a connection fee for costs associated with a "city sewer or water utility." *Id.* § 384.38(3)(a).

As the district court interpreted, a "sewer" is a structure designed, constructed, and used to control or carry off water. *See id.* § 384.37(22). The City's planned culverts do not create a new structure to control or carry off surface water. *See id.* Instead, the planned culverts simply maintain the properties' access to surface water drainage via the same creek system the properties have relied upon for hundreds if not thousands of years. Interchange's expert testified the planned roadway culverts would not function as sewers. The City's expert declined to say the planned culverts are city sewer or water utilities, stating, "that wasn't a question I was asked to—to look into." Finally, the City admitted in an interrogatory that, "Construction of under-road culverts and bridges downstream from [Interchange's] property will neither increase nor decrease the runoff capacity from [Interchange's] property." Therefore, the district court did not err in determining the City's planned improvements do not qualify as a city sewer utility. *See id.* § 384.38(3)(a). While the City is authorized to assess private property for the cost of public improvements under section 384.38(1), the City may not charge connection fees for the improvements at issue here. *See id.*

## B. Connection to City Sewer or Water Utility

Second, the City argues it has provided a "connection of [the Interchange] property to the city sewer or water utility." *Id.* The City urges that simply allowing

---

special assessments, the cost of public improvements within the city, which includes "street grading, paving, graveling, macadamizing, curbing, guttering, and surfacing with oil, oil and gravel or chloride." *See* Iowa Code §§ 384.37, .38(1).

water to drain from a property through its planned culverts creates the required "connection" to its sewer.

As explained above, the planned improvements do not constitute a "sewer." Accordingly, the City cannot provide the required "connection" to a sewer because the planned improvements do not involve a sewer. *See id.*

Even if the planned improvements constitute a "sewer," the required connection is still missing. Once a city sewer or water utility district is established, the connection fee is due and payable when the utility connection application is filed with the city. *Id.* The fact that a connection application is required indicates the property owner must do something to request a connection of the property to the utility; no connection application is needed if the property is automatically connected. As shown above, water has drained from Interchange's properties into the existing creek system for hundreds if not thousands of years. The planned improvements merely allow this drainage to continue. As the district court found, property is not connected to a sewer merely because water drains from the property and "at some point passes through a culvert under a city street." Therefore, even if the planned improvements constitute a sewer, the district court did not err when it found the City has not provided a connection of the property at issue to this sewer. *See id.*

## C. Equitable Fee

Finally, assuming the City has provided a connection to a sewer, the City argues its calculation and apportionment of the connection fee is equitable. Each person served by a city sewer or water utility must pay a connection fee. *Id.* The "connection fee may include the equitable cost of extending the utility to the

properties." *Id.* The City contends the connection fee is imposed only when a connection application is filed, and the fee is calculated by reference to the amount of developable land within the district.

As an initial matter, "connection fees are due and payable when a utility connection application is filed with the city." *Id.* This is consistent with the court's conclusion that a connection is required; if a property could properly drain its land without a connection—for example, if a property naturally drained into a nearby stream—then it would never file a connection application and never be charged a fee. The City realized this problem, so it altered the way it collects fees under Ordinance No. 2024, requiring the fee was due and payable before approval of the final plat, before approval of the site plan, or before issuance of a building permit. Collecting the fee without a connection application is inconsistent with the plain language of section 384.38(3)(a).

Additionally, the City asserted the remaining developable land in the district requires drainage improvements and it is not irrational for Interchange to contribute to the drainage benefit for the entire area. Again, the district court turned to the plain language of the statute, which states "each person whose property will be served by connecting to the city sewer or water utility shall pay a connection fee to the city." *Id.* The district court undertook a benefits analysis of the properties affected by the ordinance. *See Horak Prairie Farm*, 748 N.W.2d at 509 ("[T]he final and decisive inquiry is whether the assessment when made is just and equitable and bears some reasonable proportion to the benefits which the property derives from the improvements for which payment is to be made."). The court concluded there was no equitable apportionment based on benefits received by

the landowners because the ordinance charged a fee only to land that could still be developed. This reduced the amount of area subject to the assessment as the remaining developable land bears the entire weight of the fee.[5] Because the City reduced the amount of the area subject to the assessment and because the culverts benefited the district generally, Interchange was charged a disproportionally high fee. Therefore, the district court did not err in its determination that the fee is inequitable. *See* Iowa Code § 348.38(3)(a).

## IV. Conclusion

Because the City's connection fee has the effect of a special assessment provided for in the Iowa Code, Interchange properly appealed the validity of the ordinance to the district court and the district court had subject matter jurisdiction. In addition, the planned culverts are not a city sewer utility, Interchange did not apply for nor does the property have the required connection to a city sewer or water utility, and the connection fee is inequitable because it benefits the district generally while only charging certain landowners. We affirm the ruling of the district court.

**AFFIRMED.**

---

[5] The district court noted the "City reduced the area subject to the per acre assessment from 2500 acres to approximately 1500 acres."