# IN THE COURT OF APPEALS OF IOWA

No. 16-2142
Filed January 10, 2018

**EVERETT J. BLOBAUM and JEAN BLOBAUM, et. al.,**
    Plaintiffs-Appellants,

**vs.**

**CITY OF STRAWBERRY POINT, IOWA, A MUNICIPAL CORPORATION,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Clayton County, David P. Odekirk,

Judge.


    Property owners appeal special assessments levied by the City of

Strawberry Point. **AFFIRMED.**



    Zachary C. Herrmann, Elkader, for appellants.

    Dustin T. Zeschke and Beth E. Hansen of Swisher & Cohrt, P.L.C.,

Waterloo, for appellee.



    Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

Property owners appeal special assessments levied by the City of Strawberry Point.

## I.    *Background Facts and Proceedings*

The Iowa Department of Transportation (DOT) determined the Elkader Street portion of Highway 13 running through Strawberry Point required reconstruction.  The DOT formulated five alternatives for completion of the project.  The fifth alternative was deemed the most feasible because it maintained traffic "throughout the project," minimizing "the negative economic impact" of "detouring traffic around the community."   Under this alternative, the City would simultaneously improve "sanitary sewer mains and services" to adjacent property owners, using "slip lining methods."  A project engineer described this method as "pulling through the existing pipe, a material, a carrier material, and expand[ing] it to the perimeter of the pipe."  He elaborated, "[R]esin is forced into [the pipe], and it cures and hardens and creates a rigid pipe within the existing pipe."  The slip-lining method was an alternative to the "open cut" method used on another project.[1]

Property owners were advised they would be paying for the sewer and water connections from the street to their land.  The City's special assessments were higher than expected.  The owners believed the higher cost was attributable to the use of the slip-lining method.

---

[1] According to the project engineer, the open cut method required "complete removal of the entire roadway, excavation . . . to dig down to the existing mains, the mains were then removed, and a new main or service line was installed."

After the final assessment schedule was issued, owners appealed the assessment amounts to the district court. *See* Iowa Code § 384.66(2) (2014) ("A person having an interest in any property specially assessed may appeal from the amount of the assessment, at any stage of the special assessment procedure up to twenty days after the final publication of notice of filing of the final assessment schedule, by petition to the district court of the county where the property is located but such appeal is only to the amount of that assessment and does not stay further proceedings by the council on the improvement."). They alleged the assessments were "not in accordance with the special benefit conferred upon" them. *See id.* § 384.61 (stating generally "[t]he total cost of a public improvement . . . must be assessed against all lots within the assessment district in accordance with the special benefits conferred upon the property, and not in excess of such benefits"). Following a bench trial, the district court entered judgment for the City. The court denied a posttrial motion.

Property owners Everett and Jean Blobaum proceeded with an appeal.[2]

## II.    *Analysis*

"A city may assess to private property within the city the cost of construction and repair of public improvements within the city, and main sewers, sewage pumping stations, disposal and treatment plants, waterworks, water mains, extensions, and drainage conduits extending outside the city." *Id.* § 384.38(1). As noted, the cost must be assessed "in accordance with the special benefits" conferred on the property. *Id.* § 384.61. At the same time, where the special

---

[2] Multiple plaintiffs withdrew at the appeal stage.

assessments are "for the construction or repair of underground connections for private property for gas, water, sewers, or electricity," the legislature has declined to limit the assessment to twenty-five percent of the property's value, as it has for other assessments. *Id.* § 384.62(2). Instead, a city may make an assessment "for the actual cost of each connection for that lot." *Id.*

The Blobaums argue the district court failed to read the "special benefit" limitation in tandem with the "actual cost" provision. In their view, the "actual cost" of the improvement may be assessed against a property owner only to the extent the "actual cost" does not exceed the "special benefit" conferred upon a property owner. *See id.* §§ 384.61, 384.62(2); *Gray v. City of Indianola*, 797 N.W.2d 112, 117 (Iowa 2011) ("The statutory scheme provides limitations to 'ensure that individual property owners are not subsidizing the general benefits enjoyed by the public resulting from the improvements, particularly when street improvements are at issue.'" (quoting *Horak Prairie Farm, L.P. v. City of Cedar Rapids*, 748 N.W.2d 504, 507 (Iowa 2008))). The City responds that it may assess the actual cost of an improvement even if it exceeds the special benefit conferred upon the property owner.

We assume without deciding that the Blobaums' interpretation is the correct one and the City is limited to assessing an amount equivalent to the special benefit the improvement confers on their property. On our de novo review of the record, we are persuaded the City's assessment satisfied this standard. *See Gray*, 797 N.W.2d at 117 (setting forth standard of review).

The City assessed the Blobaums $8058.37, broken down as follows: $5637.25 for the sewer service, $1901.69 for water service, and $519.43 for the

sidewalk.[3]  The project engineer testified the sanitary sewer systems were "designed for a 50-year lifetime," and "we felt they were exceeding that."  He estimated the cost to property owners if they replaced the sewer line themselves would be $6850 in addition to the cost of tearing up and replacing the pavement. The highest city assessment for a single line was $6194, without the cost of paving and grading the road, which was borne by the City.  In short, the Blobaums received the special benefit of reconstructed sewer and water lines at a lower cost than they would have incurred had they restored the obsolete lines themselves.

The Blobaums also benefited by having Elkader Street open during construction. Although the traveling public also benefitted, this fact did not absolve the Blobaums of their obligation to pay for the improvements to their property.  *See Thorson Revocable Estate Trust v. City of West Des Moines*, 531 N.W.2d 647, 650 (Iowa Ct. App. 1995) ("[S]treet paving projects usually confer both general and special benefits," but "[t]he abutting property owners . . . obtain additional benefits for which they must separately pay").

We recognize the City made improvements to another street at a lower cost to adjacent property owners.  But that project took place five years earlier under significantly different circumstances.  Unlike Elkader Street, the road had access points which allowed closure "in segments."  Had the City closed Elkader Street, it would have been required to construct a separate road at a significant cost.  The DOT also "waive[d] some requirements for backfill trenches" on the older project. The DOT declined to grant a similar waiver on the Elkader Street project.  Finally,

---

[3] A charge of $57.70 for property frontage was apparently not included in the assessment.

the "open cut" or "open trench" method used on the earlier project was not used on the Elkader Street project because it would have resulted in "a significant increase in time" and would have made it more difficult to keep the road open during the entire project. As the plaintiffs' consulting engineer acknowledged, the "cured-in-place liner" did not "require extensive excavation, so it [could] be done without digging up the area." While he testified the open road inured to the benefit of the general public rather than the adjacent landowners, he agreed if all costs relating to paving and traffic maintenance were excluded, as they were, the Elkader Street assessment "may be a fair assessment."

We conclude the Blobaums did not overcome the presumption that the City assessments were correct and consistent with the special benefit received from the improvement. *See Gray*, 797 N.W.2d at 117. We find it unnecessary to address the Blobaums' remaining arguments. We affirm the district court judgment in favor of the City.

**AFFIRMED.**