# IN THE COURT OF APPEALS OF IOWA

No. 17-0866
Filed November 21, 2018

**RAUEN & RAUEN DEVELOPMENT, LLC, DENNIS J. RAUEN, VIRGINIA A. RAUEN, ERTL LIMITED PARTNERSHIP, and MOLO PETROLEUM, LLC,**
    Plaintiffs-Appellees,

**vs.**

**CITY OF FARLEY, IOWA,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley,

Judge.

A city appeals the district court's reduction of special assessment values.

**AFFIRMED.**

William J. Miller and Kirk W. Schuler of Dorsey & Whitney LLP, Des Moines,

for appellant.

Todd J. Locher of Locher & Davis PLC, Farley, for appellees.

Heard by Danilson, C.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**McDONALD, Judge.**

The City of Farley specially assessed certain property owners for the costs of road and storm sewer improvements made in the city's industrial-business district. The project included widening a roadway, adding a paved shoulder and curb to the roadway, and improving the storm sewer along the roadway. The city specially assessed the property owners abutting the roadway at a rate of fifty-five dollars per linear foot of property running along the improved roadway. Some property owners, including Ertl Limited Partnership, Rauen & Rauen Development LLC, Molo Petroleum, and Dennis and Virginia Rauen challenged the special assessment in district court. The district court found the property owners had been assessed in excess of the special benefits received from the project and reduced the assessments. The City timely filed this appeal.

The Code governs special assessments. Iowa Code section 384.61 (2015) requires "[t]he total cost of a public improvement . . . be assessed against all lots within the assessment district in accordance with the special benefits conferred upon the property, and not in excess of such benefits." An assessment is capped at twenty-five percent of the value of the land improved. *See Horak Prairie Farm, L.P. v. City of Cedar Rapids*, 748 N.W.2d 504, 507 (Iowa 2008).

Challenges to special assessments are reviewed de novo. *See id.* at 506. "We will give weight to, but we are not bound by, the district court's findings." *Gray v. City of Indianola*, 797 N.W.2d 112, 117 (Iowa 2011). We presume "assessments are correct and do not exceed the special benefit[s] received" by the assessed parties. *See id.* The property owners bear the burden of showing the special assessment is excessive. *See id.* However, "[a] property owner cannot generally

argue that he has not received any benefit from a public improvement; rather, a property owner must show that the benefit received was not as great as that determined by the city." *Horak Prairie Farm*, 748 N.W.2d at 507. Because mathematical certainty is not possible, "we must rely on approximations to determine the correct amount of the assessment." *Gray*, 797 N.W.2d at 117. Ultimately, the court must consider "whether the assessment 'represents a fair proportional part of the total cost.'" *Horak Prairie Farm*, 748 N.W.2d at 507 (quoting *Rood v. City of Ames*, 60 N.W.2d 227, 238 (Iowa 1953)).

From the outset, according to the evidence, the project was ill-conceived. The industrial-business district is isolated on the outskirts of the city. The city did not initiate the project in response to any professional study, such as a water-drainage study or traffic study. Instead, the city initiated the project because of some concern the roadway was deteriorating. The city widened the road and added curb and gutter to match a small segment of the roadway in front of one of the businesses in the industrial-business area. Specifically, a construction company abutting the roadway had added a curb and gutter to the roadway immediately in front of its business.

Given the genesis of the project, it is unsurprising the project generated very little, if any, benefit for assessed property owners. The property owners testified the project failed to provide them with meaningful improvements. None of the owners had any prior issue with tire rutting on their properties from vehicles turning in, therefore, the shoulder apron provided no benefit. None benefitted from the increased turning radius provided by the widened street. Those who had some water drainage issues received no relief upon the project's completion. The

testimony shows the water drainage issues actually increased after the completion of the improvement.

The property owners' testimony was bolstered by their expert witness, Harold Smith, a former city engineer of the City of Des Moines, who testifies regularly in these types of proceedings. *See, e.g., Gray*, 797 N.W.2d at 114. Smith testified the owners received only a de minimis benefit from the project. The project did not reduce noise. The project did not reduce roadway dust. The project did not improve police or fire access to the industrial-business district. The project did not improve the ability to remove snow or ice. The project did not improve water drainage. The project did not reduce ditch maintenance. The project did not improve street parking. The project widened the roadway, however, the widening was excessive and not useful because the city did not widen the road enough to add additional traffic lanes. Smith did testify the property owners received a minimal special benefit in the form of increased market value of the properties due to the aesthetic improvement from the added curb and gutter.

Given the lack of benefits from the project, Smith opined the project was best classified as a curb and gutter installation. Smith testified the Flint formula is commonly used to determine the special benefits associated with a project of this type. *See id.* at 114 n.4. (discussing the Flint formula). Smith testified, without objection, the appropriate formula in this case as follows: "One-and-a-half feet of curb and gutter times the lineal feet of a frontage for the property . . . which gives you square feet, divided by nine, gives you square yards, times $44.50 a square yard." He again testified to the formula, without objection, describing it as "[th]e area, the frontage times one-and-a-half foot of curb and gutter times the $44.50 a

yard." While Smith testified about the formula, he did not provide any testimony regarding the specific dollar amounts derived from applying the formula to the various properties in this case. The data regarding the amount of linear feet of frontage for each assessed property was admitted into evidence without objection.

The city contends the court should not have considered Smith's formula because it was not disclosed prior to trial. However, the city did not object to Smith's testimony regarding the formula. Error is not preserved. *See Van Iperen v. Van Bramer*, 392 N.W.2d 480, 486 (Iowa 1986) (concluding challenge to expert testimony was not preserved when counsel failed to object to question or move to strike an answer).

In contrast to Smith's formula used to calculate the special benefit and appropriate assessment, the city's assessment appears to bear no relationship to the special benefit conferred by the project. We need not go into the details, but the record reflects the city council held numerous meetings regarding this project and the special assessment. It is a fair summary of the evidence to state the city backed into an assessment determination not based on special benefit to the property owners but instead based on how much of the cost the city wanted to pass along to the property owners. In other words, the primary driver of the assessment was the city's budget and not the property owners' benefit.

Given the two valuation models presented to the district court, on de novo review, we cannot conclude the district court erred in crediting Smith's testimony and assessment formula. The district court applied the formula to the evidence and determined the special benefit conferred by the project. The district court then determined the city's special assessment exceeded each of the property owners'

respective special benefit received. The district court reduced the special assessment appropriately.

The district court's calculation of the special benefit is not without controversy. The property owners attached to their post-trial brief what they called an exhibit. The exhibit was a table showing the application of Smith's formula to the facts of this case and the resulting values. The district court's assessment findings corresponded to the values set forth in the property owners' post-trial exhibit. The city contends the district court's consideration of the post-trial exhibit constitutes reversible error because the record was closed. Under the facts and circumstances of this case, we disagree. Here, Smith testified regarding his formula to calculate the special benefit and assessment. The city did not object to the testimony. Here, the data regarding the linear feet of frontage for each assessed property was in evidence without objection. The property owners' exhibit was nothing more than a table that summarized the evidence and performed the arithmetic for the district court. It would have been no different if the property owners had inserted the table into the brief and not labeled the table an exhibit. In addition, the district court could have performed the same task based on the evidence.

In conclusion, the property owners successfully demonstrated the special assessments exceeded the resulting special benefits, requiring a reduction of the special assessments. We have considered each of the city's arguments, whether or not set forth explicitly herein, and none entitle the city to relief.

**AFFIRMED.**

Danilson, C.J., concurs; Blane, S.J., concurs specially.

**BLANE, Senior Judge** (concurring specially)

I concur with the majority opinion, but write to explain my reasoning. The City relies on several arguments to justify their assessment to the abutting property owners. Under scrutiny, these arguments do not stand up. First, the City contends that its assessment based on $55 per lineal frontage foot constitutes the special benefit received by the owners from the project. The City had proposed the $55 per lineal foot as the assessment when the project was in its planning stage. The City decided on this same amount when the project was completed and continually referred to it as a "lineal foot" assessment based on each owner's frontage foot to the road. As noted by the majority, a purely "lineal foot" assessment does not comport with the law. The City never established a relationship between the special benefit and the $55 per lineal foot assessed to the various properties.

Second, the City argues that it expanded the project and increased the overall cost at the request of the property owners, who then complained and challenged the assessment. The problem with the City's argument is that the property owners made their proposals regarding expanding the project during preliminary negotiations with the City, which would have ended in an agreement where the property owners and City would each pay for the project 50/50. The City rejected the owners' proposal, abandoned the negotiations and proceeded with the statutory assessment process. The City was under no obligation to expand the project and its argument that the expanded project somehow automatically constituted a special benefit because it was suggested by the owners is unacceptable. The City was still obligated to establish the project as completed

conferred special benefit to the owner's property to justify the assessments. This the City failed to do.

Finally, the City complains that in determining the assessment, the trial court relied upon the formula testified to by the owners' expert, Harold Smith. It contends that Smith's formula is nothing more than a "per lineal foot" calculation. It continues, if the City's "per lineal foot" assessment does not equate to "special benefit", then the court erred in using Smith's formula in calculating the assessment and rendering its judgment. I do not agree with the City's predicate. Smith connected his formula to the special benefit conferred on the owners' properties. In addition, Smith's formula was based upon the Flint Method, which our supreme court has approved. See *Gray v. City of Indianola*, 797 N.W.2d 112 (Iowa 2011).